928 F.2d 118
 55 Fair Empl.Prac.Cas. 591,
56 Empl. Prac. Dec. P 40,657, 66 Ed. Law Rep. 554
 Arcangel ALVARADO, Plaintiff-Appellee,
v.
BOARD OF TRUSTEES OF MONTGOMERY COMMUNITY COLLEGE; Raul
Parilla, Defendants-Appellants.
Arcangel ALVARADO, Plaintiff-Appellee,
v.
BOARD OF TRUSTEES OF MONTGOMERY COMMUNITY COLLEGE; Raul
Parilla, Defendants-Appellants.
 Nos. 89-3314, 89-3378.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 10, 1990.
Decided March 14, 1991.
 
 Maurice Baskin (argued), N. Peter Lareau (on brief), Venable, Baetjer, Howard & Civiletti, Washington, D.C., Joan I. Gordon, Gen. Counsel, Montgomery College, Rockville, Md., for defendants-appellants.
 Mayda Colon Tsaknis (argued), Rockville, Md., for plaintiff-appellee.
 Before MURNAGHAN, Circuit Judge, SMITH, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation, and YOUNG, Senior U.S. District Judge for the District of Maryland, sitting by designation.
 EDWARD S. SMITH, Senior Circuit Judge:
 
 
 1
 Arcangel Alvarado ("Alvarado") filed a discrimination claim against the President and the Board of Trustees of Montgomery Community College ("the College"). Alvarado alleges that the College discriminated against him when they failed to promote him to a full-time staff position. Instead, the College promoted another man and Alvarado was subsequently terminated. He brought suit under Title VII of the Civil Rights Act of 1964, as amended,[1] claiming discriminatory employment practices. We affirm the district court finding that the College intentionally discriminated against Alvarado.
 
 
 2
 * Alvarado is a 24 year old Hispanic male originally from Colombia, South America. Alvarado began working for the College on October 22, 1984, as a temporary worker (hired on a day-to-day basis) to perform various types of cleaning work. He did not receive any benefits beyond his wages, and although he worked fulltime, his position was terminable at will. There are conflicting accounts as to whether Alvarado's job performance was satisfactory.
 
 
 3
 Less than one month after he was hired, a permanent position became available. Following the proper College procedure, Alvarado sent a written memo to Ms. Denise Fitzgerald, the Personnel Specialist, requesting consideration for the position.
 
 
 4
 On February 7, 1985, the College gave the permanent position to Mr. Lenochs Marshall ("Marshall") who was hired as a temporary worker approximately two weeks after the College hired Alvarado. Although both were "temporary" workers, Marshall worked only parttime whereas Alvarado worked on a full-time basis at the College. Unlike Alvarado, who had prior job experience cleaning office buildings, Marshall had no such prior experience. For example, Alvarado actually had to teach Marshall how to use the buffing machines.
 
 
 5
 According to Ms. Audrey Smith, the Director of Personnel, when a staff position becomes available, it is normally given to the temporary employee who had "filled in" for the absent full-time employee. Although Alvarado held that temporary position, the job was awarded to Marshall despite the fact he did not apply for the position.
 
 
 6
 Maintaining the status of a temporary employee, Alvarado continued to work at the College until he was fired. The reason given to Alvarado for his termination was that there was no more work. However, four other similar positions were filled after Alvarado's termination. Alvarado subsequently obtained gainful employment elsewhere.
 
 
 7
 Alvarado sued the College under section 2000e of Title VII of The Civil Rights Act of 1964, as amended, claiming unlawful discrimination. Specifically, Alvarado claims that the College discriminated against him by refusing to promote him to the permanent position and by discharging him. Alvarado demanded reinstatement with back pay, attorney's fees and miscellaneous costs. The district court found that the College intentionally discriminated against Alvarado, and the College appealed.
 
 II
 
 8
 The question on appeal is whether the district court's finding that the College unlawfully discriminated against Alvarado in either their promotion or termination practices is clearly erroneous. We find that it is not.
 
 
 9
 The district court found that the College intentionally discriminated against Alvarado. As a question of fact, that finding of discrimination may be overturned only if we find it clearly erroneous. Rule 52(a) requires this court to review the trial court's findings with great deference especially when the factfinder has based his decision in part on the credibility of the witnesses.[2]
 
 III
 
 10
 In an action under Title VII of The Civil Rights Act,[3] the burden of production oscillates between the plaintiff and the defendant.
 
 
 11
 The plaintiff must first make out a prima facie case of discrimination. Establishing a prima facie case shifts a burden of production to the defendant to present evidence of a legitimate, nondiscriminatory reason for the adverse action. If the defendant produces evidence of such a reason, then the plaintiff must show that the reason presented by the defendant is merely a pretext for discrimination. The plaintiff retains the ultimate burden of persuasion throughout the process.[4]
 
 
 12
 Our analysis is guided by this procedure.
 
 1. Failure to Promote Claim
 
 13
 In prosecuting such a claim, the plaintiff's burden is to establish a prima facie case of intentional discrimination.[5] In Wright v. National Archives & Records Service,[6] complainant filed a suit for failure to promote under Title VII. This court applied a modified McDonnell test,[7] relying on the acknowledgement in McDonnell that the components of the test will vary with differing applications of Title VII.[8] Accordingly, we accept the district court's modified test which requires Alvarado to prove that:
 
 
 14
 1. he is a member of a protected group;
 
 
 15
 2. he applied for the position in question;
 
 3. he was qualified for the position; and
 
 16
 4. he was rejected for the position in favor of someone not a member of the protected group under circumstances giving rise to an inference of unlawful discrimination.
 
 
 17
 Alvarado presented sufficient evidence to establish a prima facie failure to promote claim. First, Alvarado is Hispanic and therefore a member of a protected group. Secondly, he submitted a written application for the permanent staff position in compliance with the College's policy. Thirdly, Alvarado had prior job experience in the commercial cleaning business. He was familiar with the responsibilities of the full-time staff position. Lastly, the job was given to a non-Hispanic who had only been working on a part-time basis and had much less experience.
 
 
 18
 The College adequately rebutted Alvarado's contentions of discrimination by asserting that Alvarado was not promoted because he was not the most qualified applicant for the permanent position. Thus, the burden of production shifted back to Alvarado to show that the College's reasons for terminating him were merely a pretext for discrimination.
 
 
 19
 In resolving the credibility conflicts in favor of Alvarado, the district court found that Alvarado satisfactorily performed his duties despite the College's assertions to the contrary. As an appellate court, we must defer to the district court's resolution of credibility conflicts.[9] Therefore, the College's assertion that Alvarado's unsatisfactory job performance influenced their decision not to promote him is not supported by record facts.
 
 
 20
 The College promoted a part-time employee, Marshall, who had no prior cleaning experience nor had he been an employee of the College for as long a time as Alvarado. Alvarado, who worked on a full-time basis, was the more experienced cleaning worker, and even according to Marshall, was the more qualified for the job.
 
 
 21
 Furthermore, two College policies were violated when Marshall was promoted instead of Alvarado. As required, Alvarado submitted an application for this permanent position. Marshall did not. Secondly, the College policy is to fill a vacant permanent position with the employee who held the job as a temporary employee. Alvarado held that position and therefore should have been the employee promoted to fill the vacancy. Thus, Alvarado met his burden of establishing that the College's reasons for not promoting him were not supported by the facts and were therefore merely pretextual. We conclude that it was more likely than not that a discriminatory reason motivated the College in its refusal to promote Alvarado.
 
 2. Discriminatory Discharge Claim
 
 22
 Alvarado also has the burden of establishing a prima facie case to prevail on a discriminatory discharge claim.[10] In Williams, this court applied a four-part prima facie test which required plaintiff to prove that:
 
 
 23
 1. he is a member of a protected class;
 
 
 24
 2. he was qualified for his job and his job performance was satisfactory;
 
 
 25
 3. in spite of his qualifications and performance, he was fired; and
 
 
 26
 4. the position remained open to similarly qualified applicants after his dismissal.[11]
 
 
 27
 Alvarado presented sufficient evidence to establish a prima facie wrongful discharge claim. First, Alvarado is a member of a protected class. Second, he was a qualified applicant for the job and his job performance was satisfactory. Third, Alvarado, in spite of his qualifications and performance, was fired. Although Alvarado cannot technically satisfy the fourth element of the prima facie test because the job opening was filled by Marshall before the College fired Alvarado, four positions did remain open to similarly qualified applicants in the four months following Alvarado's termination. We find that Alvarado presented sufficient evidence to satisfy the four elements of a prima facie wrongful discharge claim.
 
 
 28
 The burden of production then shifted to the College which rebutted Alvarado's contentions by asserting at trial that Alvarado was discharged because his job performance was unsatisfactory. Specifically, the College alleged that Alvarado failed to complete his assigned duties and often could not be found at his assigned areas.
 
 
 29
 As stated earlier, as an appellate court, we must defer to the district court's resolution of credibility conflicts.[12] In resolving credibility conflicts in favor of Alvarado, the district court found that on the day Alvarado was fired, he was told he was terminated because there was a lack of work at the College. This finding of fact contradicts the College's post hoc assertion at trial that Alvarado was fired for unsatisfactory job performance. Therefore, the College's assertion that Alvarado's unsatisfactory job performance was the reason for his termination is not supported by the record facts. Alvarado has established that the College's reasons for discharging him were merely pretextual. Accordingly, we conclude that Alvarado's discharge was discriminatorily motivated.
 
 IV
 
 30
 We also affirm the district court's ruling in awarding attorney's fees to Alvarado. Such a fee award is authorized by Title VII of The Civil Rights Act,[13] and by The Civil Rights Attorney's Fee Awards Act.[14] Because a "court that tries a case is best qualified to make an appropriate allowance of attorney's fees," the rates requested by the prevailing attorneys and held by the trial court to be reasonable are granted.[15]
 
 
 31
 In McManama v. Lukhard,[16] the court held that "an allowance of attorney's fees by a district court, which has close and intimate knowledge of the efforts expended and the value of the services rendered, must not be overturned unless it is 'clearly wrong'."[17] The district court's assessment of attorney's fees is not clearly wrong and is affirmed.
 
 V
 
 32
 Although there is evidence to support the College's position, there is also evidence to support the district court's findings of facts favoring Alvarado. If the evidence supports two views regarding the action complained of, the "factfinder's choice between them cannot be clearly erroneous."[18] Because Alvarado presented sufficient evidence that the College intentionally discriminated against him, this court affirms the finding of the district court. Furthermore, the College shall bear the attorney's fees of their opponent.
 
 
 33
 AFFIRMED.
 
 
 
 [1]
 42 U.S.C. Sec. 2000e (1988)
 
 
 [2]
 "Findings of fact ... shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Fed.R.Civ.P. 52(a)
 
 
 [3]
 42 U.S.C. Sec. 2000e-2(a)(1). "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." Id
 
 
 [4]
 Jamil v. Secretary, Dep't of Defense, 910 F.2d 1203, 1206 (4th Cir.1990)
 
 
 [5]
 McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The complainant must establish that:
 (1) he belongs to a racial minority;
 (2) he applied and was qualified for a job for which the employer was seeking applicants;
 (3) despite his qualifications, he was rejected; and
 (4) after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.
 Id.
 
 
 [6]
 609 F.2d 702 (4th Cir.1979)
 
 
 [7]
 To establish a prima facie case in Wright, plaintiff had to prove that:
 (1) he belonged to a racial minority;
 (2) he sought and was qualified for promotion to a position to which promotions were being offered to persons of his qualifications by his employer;
 (3) despite his qualifications, he was rejected; and
 (4) after his rejection, the position remained available by promotion to others of his qualifications.
 Id. at 714.
 
 
 [8]
 McDonnell, 411 U.S. at 802, 93 S.Ct. at 1824
 
 
 [9]
 Anderson v. Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)
 
 
 [10]
 Williams v. Cerberonics, Inc., 871 F.2d 452, 455 (4th Cir.1989)
 
 
 [11]
 Id. (citation omitted)
 
 
 [12]
 Anderson, 470 U.S. at 574, 105 S.Ct. at 1511
 
 
 [13]
 42 U.S.C. Sec. 2000e-5(k)
 
 
 [14]
 42 U.S.C. Sec. 1988 (1988)
 
 
 [15]
 Craig v. Secretary, Dep't of Health & Human Services, 864 F.2d 324, 328 (4th Cir.1989)
 
 
 [16]
 616 F.2d 727 (4th Cir.1980)
 
 
 [17]
 Id. at 729 (citation omitted)
 
 
 [18]
 Anderson v. Bessemer City, 470 U.S. at 574, 105 S.Ct. at 1511 (quoting United States v. Yellow Cab Co., 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949))