958 F.2d 368
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Malethu T. MATHEW, Plaintiff-Appellant,
v.
VIRGINIA UNION UNIVERSITY, Defendant-Appellee.
 No. 91-2593.
 United States Court of Appeals,
Fourth Circuit.
 Argued: December 2, 1991
Decided: March 27, 1992
 
 1
 ARGUED: Carolyn P. Carpenter, Carpenter & Associates, Richmond, Virginia, for Appellant.
 
 
 2
 Henry L. Marsh, III, Hill, Tucker & Marsh, Richmond, Virginia, for Appellee.
 
 
 3
 ON BRIEF: David E. Cheek, Sr., Hill, Tucker & Marsh, Richmond, Virginia, for Appellee.
 
 
 4
 Before ERVIN, Chief Judge, HAMILTON, Circuit Judge, and SHEDD, United States District Judge for the District of South Carolina, sitting by designation.
 
 SHEDD, District Judge:
 
 5
 Malethu Mathew appeals from an order of summary judgment on his claims of employment discrimination brought pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C.ss 621-634; and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. Mathew contends that his employer, Virginia Union University (Union), discriminated against him based on his age and national origin by denying him tenure and promotion, by not renewing his contract for a department chairmanship, and by paying him a salary which was less than the salary Union paid to the employee who replaced Mathew as department chairman. After a thorough review of the record, we affirm the judgment of the district court.
 
 
 6
 We review the grant of summary judgment under a de novo standard, applying the same standard as that applied by the district court under Rule 56(c) of the Federal Rules of Civil Procedure. Kowaleviocz v. Local 333 of the Int'l Longshoremen's Ass'n, 942 F.2d 285, 288 (4th Cir. 1991). Under Rule 56(c) summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In our review, we must draw all inferences in the light most favorable to the non-movant. Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990), cert. denied, 111 S.Ct. 1018 (1991). If we determine after viewing the record as a whole that a rational trier of fact could not find for the non-movant, then we must affirm the grant of summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 
 7
 * Mathew is an East Indian citizen who has been employed as an Associate Professor by Union, a predominantly black university located in Richmond, Virginia, since August 1985.[1] Mathew also served as Chairman of the Department of Biology from the time that he was hired until June 1989, when he was removed from that position. As department chairman, Mathew received a separate contract and was paid an additional sum ($1,000) for the performance of his duties.
 
 
 8
 In the fall of 1988, Mathew applied for promotion to Professor and for tenure. Mathew submitted his application, which included a curriculum vitae, along with letters of recommendation from faculty members, including his present and former Division Chairmen, and students. Mathew's application was sent to the Promotions and Tenure Committee ("the Committee") for consideration. After meeting several times, the Committee voted, with one dissent, to recommend Mathew for both promotion and tenure. At the same time, the Committee also voted to recommend Dr. Rajendra P. Ravel, another faculty member of East Indian origin, for promotion and tenure.
 
 
 9
 In accordance with Union's procedure for processing applications for promotion and tenure, the Committee forwarded its recommendations to Dr. William H. Owens, the Vice President for Academic Affairs ("the VPAA"), who in turn sent the recommendations to Union's president, Dr. S. Dallas Simmons. Again, in accordance with Union's review procedures, Dr. Owens also sent his own recommendations to Dr. Simmons. While Dr. Owens concurred in the Committee's recommendation as it pertained to Dr. Ravel, he did not recommend Mathew for either promotion or tenure.[2] Union eventually denied Mathew a promotion or tenure.[3] Thereafter, in accordance with Union's policy, Mathew appealed his case to the Academic Affairs Committee of Union's Board of Trustees ("the Board of Trustees"). Before the Board of Trustees could hear Mathew's case, however, Dr. Owens sent Mathew's application back to the Committee for further review. The Committee ultimately renewed its recommendation that Mathew receive tenure and promotion.[4]
 
 
 10
 The matter was then again sent to the Board of Trustees, which requested that Dr. Owens explain his objections to Mathew's application. Dr. Owens responded in a letter to the Board of Trustees that he did not believe that Mathew had served Union with distinction. In support of his position, Dr. Owens cited project evaluation review reports made by Department of Education examiners of the Minority Institutions Science Improvement Program concerning a project directed by Mathew, in which the examiners had given Union an average score of 134 out of a possible 300. Dr. Owens also indicated that Mathew had a continuing problem maintaining collegiality and cited as an example a situation involving Mathew and a laboratory assistant, in which the laboratory assistant threatened to bring a harassment suit against Mathew. The Board of Trustees ultimately denied Mathew tenure and promotion.
 
 
 11
 Subsequently, in May 1989, Dr. Coe gave Mathew his annual review, in which Dr. Coe rated Mathew a score of 92 out of a possible 100. However, Dr. Coe later lowered this score, without Mathew's knowledge, to a score of 82. In June 1989, Dr. Owens recommended that Mathew's contract as Chairman of the Biology Department not be renewed. Dr. Owens indicated by affidavit that he made this recommendation in response to comments received by the College and University Accreditation Association which indicated that Union needed to make improvements in the curriculum and research emphasis of the Biology Department. Dr. Owens also stated that he was motivated by certain unspecified "difficulties" with Mathew. Thereafter, Union did not renew Mathew's contract but, instead, replaced Mathew with Dr. Henry Bass, a thirty-five year old American-born alumnus of Union with a Ph.D. in Biology. Union had recruited Dr. Bass in part because he had significant experience in the areas of research and publication. Union paid Dr. Bass approximately $11,000 more than it paid Mathew because, according to Union, Dr. Bass negotiated that amount and Union felt strongly that it needed his research experience.
 
 
 12
 Thereafter, Mathew filed this lawsuit alleging that Union violated Title VII by denying his request for promotion and tenure, and that Union violated Title VII and the ADEA by not renewing his chairmanship and by paying a higher salary to Bass.[5] The district court granted Union's motion for summary judgment on all of Mathew's claims finding that Mathew failed to make a prima facie showing of discrimination on his claim for denial of tenure and non-promotion, and that although Mathew did make out a prima facie case on his claims concerning the nonrenewal of his chairmanship and the pay disparity, he failed to rebut Union's articulated non-discriminatory explanations for those decisions. This appeal followed.
 
 II
 
 13
 As noted, Mathew's complaint of discrimination is three-fold. Before addressing Mathew's claims, we first note the scheme of proof which is applicable in this case. In order to prevail on his claims, Mathew must prove that "but for" Union's discriminatory intent, no adverse employment decisions would have been taken against him. Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 233 (4th Cir. 1991). The method of proof upon which Mathew relies in this case is the familiar "shifting burdens" analysis first enunciated by the Supreme Court in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), which is applicable to claims under both Title VII and the ADEA. Goldberg v. B. Green & Co., 836 F.2d 845, 849 (4th Cir. 1988). This method of proof places the initial burden on Mathew to establish, by a preponderance of the evidence, a prima facie case of discrimination. Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989). If Mathew is unable to establish a prima facie case, then our inquiry ends and judgment must be entered in Union's favor. Gairola v. Virginia Dep't of Gen. Servs., 753 F.2d 1281, 1288 n.4 (4th Cir. 1985). If Mathew does establish a prima facie case, then an inference of discrimination arises and the burden shifts to Union to present evidence that its decision was based on a legitimate, nondiscriminatory reason. Patterson, 491 U.S. at 187. If Union meets its burden in this regard, then the burden shifts back to Mathew to establish that Union's stated reason is pretextual. Id. Mathew may establish pretext by either showing that "a discriminatory reason more likely motivated [Union] or ... that [Union's] proffered explanation is unworthy of credence." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981). Throughout the entire proceeding, the final burden of proving intentional discrimination remains with Mathew. Patterson, 491 U.S. at 187.
 
 A.
 
 14
 Mathew first contends that Union discriminated against him based on his national origin by denying him a promotion and tenure. In order to establish a prima facie case of discrimination as a result of not being promoted or granted tenure, Mathew must show that (1) he is a member of a protected group, (2) he applied for the promotion and tenure, (3) he was qualified for promotion and tenure, and (4) he was rejected under circumstances giving rise to an inference of unlawful discrimination. See Alvarado v. Board of Trustees of Montgomery Community College, 928 F.2d 118, 121 (4th Cir. 1991).[6] This is essentially the test that the district court applied in finding that Mathew failed to make a prima facie showing on this claim. Specifically, the district court found that although Mathew presented "some evidence" as to the first three elements of his prima facie case, he did not present any other evidence to show that his national origin was a determining factor in Union's decision not to grant him a promotion or tenure.
 
 
 15
 We cannot say that the district court erred on this point. Even though it appears that Mathew clearly met his burden with regard to the first three prongs of his prima facie case, as this Court noted in Holmes v. Bevilacqua, 794 F.2d 142, 147 (4th Cir. 1986) (en banc), proof of the first three prongs "only sets the stage for the fourth, which tips the scale in favor of a prima facie case, because the fourth prong requires proof that points toward illegal discrimination." We agree with the district court's conclusion that Mathew did not present any credible evidence to establish that his national origin was a determining factor in Union's decision not to promote him or grant him tenure.[7] Although Mathew argues that an inference of discrimination arises from the fact that Dr. Owens discounted the Committee's recommendation and instead recommended against Mathew's request for promotion and tenure, we find nothing inherently discriminatory about this, particularly in light of the fact that the tenure and promotion review process specifically provides that the VPAA (Dr. Owens) is to forward the Committee's recommendation to the university President along with "any commentary the VPAA deems appropriate." Furthermore, the mere fact that Mathew's request is the first one ever to have been approved by the Committee but not by Union does not in and of itself indicate that Union's motives were improper.[8] Therefore, because we find that Mathew failed to carry his burden, we affirm the grant of summary judgment on this claim.
 
 B.
 
 16
 Mathew next asserts that Union did not renew his contract as Chairman of the Biology Department because of his age and national origin. The district court found that Mathew made a prima facie showing of age and national origin discrimination on this claim. However, the district court also found that Union met its burden of presenting a legitimate, nondiscriminatory explanation for its decision not to renew Mathew's contract and that Mathew then failed to meet his burden of showing that Union's stated reasons are pretextual. Because we will accept the district court's conclusion that Mathew made a prima facie showing for purposes of this appeal, we will focus on these second and third stages of the shifting burdens analysis.
 
 
 17
 Dr. Owens explained that the reason he recommended that Mathew's contract not be renewed is that there was a perceived need for improvement in the Biology Department's curriculum and emphasis on research.[9] Dr. Owens based his recommendation at least in part on comments he had received from the College and University Accreditation Association. This explanation satisfies Union's burden of articulating a legitimate nondiscriminatory explanation for its decision. The burden therefore shifts back to Mathew to show that this reason is pretextual.
 
 
 18
 Mathew has clearly failed to make such a showing. While Mathew attempts to discredit Union's explanation by asserting that Union has not traditionally been a research institution, that assertion in no way discredits Union's explanation that it desires to improve in the area of research. Moreover, although Mathew contends that he worked to improve Union's research facilities, that fact simply does not make Union's explanation unworthy of credence. We similarly find Mathew's other assertions to be without merit and affirm the district court's grant of summary judgment on this claim.
 
 C.
 
 19
 Finally, Mathew claims that Union paid him a lower salary than it paid Bass because of his age and national origin. The district court assumed that Mathew made a prima facie showing on this claim but found that Mathew failed to rebut Union's proffered explanation that Bass was paid a higher salary because he negotiated a higher salary. We will again assume that Mathew has made a prima facie showing and focus on the second and third stages of the analysis.
 
 
 20
 We find Union's stated explanation that it paid Dr. Bass a higher salary than it paid Mathew because Dr. Bass negotiated that salary to satisfy Union's burden under the circumstances to present in this case.[10] We likewise find that Mathew has failed to establish that Union's explanation is pretextual. Although Mathew again argues that Union's explanation is unworthy of belief because at the time Dr. Bass was recruited, Union was not a research institution, this assertion simply has no bearing on Union's stated desire to upgrade its research capabilities. Mathew's failure to meet his burden at this juncture compels us to affirm the district court on this claim as well.
 
 III
 
 21
 Mathew was required to show that he was removed as department chairman, paid less, and not promoted and granted tenure because he is over the age of 40 and/or of East Indian origin, not simply that he is over the age or 40, of East Indian origin, and suffered those adverse employment decisions. Autry v. North Carolina Dep't of Human Resources, 820 F.2d 1384, 1386 (4th Cir. 1987). After carefully reviewing the record and the controlling legal authorities, we find that Mathew failed to make such a showing and that the district court properly entered summary judgment against him. Accordingly, we will affirm the judgment.
 
 AFFIRMED
 
 
 [1]
 Mathew's date of birth is December 30, 1935. Mathew is, therefore, within the protection of the ADEA
 
 
 [2]
 In a letter to Dr. Simmons, Dr. Owens listed three reasons for his recommendation. First, he noted that Mathew had applied and been rejected for promotion and tenure in 1987 and, in his view, Mathew's "professional contribution" to Union had not changed since that time. Second, Dr. Owens stated that he concurred in the opinion of Mathew's supervisor that Mathew lacked "volume and profundity of research." Last, Dr. Owens indicated that Mathew's relationship with external grant agencies did not exhibit a proper level of professionalism
 
 
 [3]
 This was the first occasion in 40 years that a recommendation of the Committee had been overridden by Union's administration
 
 
 [4]
 The Chairperson of the Committee requested that Dr. Owens and Dr. Elmon Coe, Mathew's Department Chair, appear before the Committee to explain why they felt that the Committee's recommendation concerning Mathew not be followed; however, neither Dr. Owens nor Dr. Coe went before the Committee
 
 
 [5]
 Mathew also alleged that Union had retaliated against him in violation of Title VII; however, Mathew withdrew that claim in the district court
 
 
 [6]
 As this Court noted in Alvarado, the components of a prima facie case will vary depending on the particular claim involved. 928 F.2d at 121. In this case, Mathew's bid for promotion and tenure was not part of a competitive process; therefore, unlike Alvarado, the prima facie case here does not focus on whether an individual who is not in the protected group received the promotion over Mathew
 
 
 [7]
 The district court considered the fact that Ravel, another East Indian, received promotion and tenure to be "strong evidence" that Mathew's national origin was not a factor in Union's decision. While we agree that this is some evidence negating Mathew's claim, we do not consider it to be conclusive in this case since Mathew and Ravel were not competing for one vacant position
 
 
 [8]
 Mathew points to the fact that Dr. Owens recommended and Union granted tenure to Dr. Jeffrey Gipson even though Dr. Owens found that Dr. Gipson, like Mathew, lacked collegiality. Mathew fails, however, to present any other evidence about Dr. Gipson's qualifications which would lead to a 6350 35 7 meaningful comparison between Dr. Gipson and himself
 
 
 [9]
 Dr. Owens also cited unspecified"difficulties" with Mathew as a basis for his recommendation. We find this explanation to be too vague to satisfy Union's burden of producing a legitimate explanation for its decision not to renew Mathew's contract
 
 
 [10]
 As a general proposition, we recognize that Union's explanation could easily be used as a pretext in all cases involving pay disparity. While this explanation must be viewed with caution, we note that in circumstances such as we find here, where a plaintiff fails to show any evidence of pretext (e.g., employer taking sig nificantly different negotiating posture in similar circumstances), this explanation is valid