61 F.3d 899
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Calvin CARTER, Plaintiff-Appellant,
v.
SMITHFIELD'S of Morehead, Incorporated, d/b/a Smithfield's
Chicken-N Bar-B-Q; Smithfield Management
Corporation; TKB Industries,
Incorporated, Defendants-Appellees.
 No. 93-2034.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 7, 1994.
Decided: July 26, 1995.
 
 Before WIDENER and WILKINSON, Circuit Judges, and BRINKEMA, United States District Judge for the Eastern District of Virginia, sitting by designation.
 ARGUED: Ralph Thomas Bryant, Jr., Morehead City, NC, for Appellant. Marvin Schiller, Raleigh, NC, for Appellees.
 OPINION
 PER CURIAM:
 
 
 1
 Calvin Carter appeals the district court's grant of summary judgment in favor of the defendants, Smithfield's of Morehead, Inc. (Smithfield), Smithfield Management Corporation (Management), and TKB Industries, Inc. (TKB) (collectively Smithfields) and dismissal of his claims of racial discrimination in hiring and promotion, pursuant to 42 U.S.C. Sec. 1981, and discriminatory discharge under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e et seq. We affirm the district court's grant of summary judgment to the defendants and the dismissal of the case.
 
 
 2
 In reviewing the district court's grant of summary judgment, we view the underlying facts and inferences to be drawn therefrom in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 
 3
 In February of 1989, Carter, a black male, first went to the Morehead City Smithfield's restaurant and saw Terry Barbour, the manager there, about an assistant manager position which, among others, had been advertised in the newspaper. Barbour set up an appointment for Carter with Gregory Moore, president of Smithfield and Management.[1] Carter applied for an assistant manager's position, but did not apply for a manager position. Moore told Carter that, although his credentials were impressive, they were not hiring assistant managers at that moment. Moore indicated that some types of jobs were available, but not at the same pay as those advertised. Carter then telephoned Barbour at the Morehead restaurant, and Barbour told Carter that he would hire him on an hourly basis "with the promise that I could work my way into management." Carter was hired sometime in February or March of 1989[2] as a crew member, to train as an assistant manager if an opening occurred, and if merited, and to be paid $4.25 per hour. Barbour's reason for not hiring Carter as an assistant manager was primarily because Carter was not available to close the restaurant, due to having a second job at another restaurant. Carter contends, as part of his prima facie case, that several whites were hired into management after he was hired. Carter contends that Elbert Jones, a white male, was hired as an assistant manager at the restaurant a few weeks after Carter started, but Smithfield's records reflect that Elbert Jones was hired, before Carter was hired, as an assistant manager-trainee at $4.25 per hour on February 18, 1989. Carter also claims that Seavey Stevens was hired as an assistant manager and then promoted to manager after Carter was hired as a crew member, but Smithfield's records reflect that Stevens was hired as a manager-trainee, making $3.58 per hour, and not as an assistant manager. It is undisputed that Carter only applied for an assistant manager position and was not qualified, and did not apply, to be a manager. However, Barbour's deposition can be construed to establish that the Morehead restaurant hired Timmy Elliott, a white male, as an assistant manager during the period between Carter's hiring and his August promotion to assistant manager.[3] Stevens had urged Barbour to make Carter an assistant manager, but Barbour told him that Carter would never be an assistant manager if he had anything to do with it and told Stevens that "the sooner I can get rid of Calvin, the better I would like it." At some point, Carter became a back line supervisor, and subsequently was promoted to assistant manager in August of 1989 and received a raise in October 1989, which brought his hourly pay to the upper level of pay for assistant managers.
 
 
 4
 On November 30, 1989, Barbour discharged Carter, telling him that the reason for the discharge was that he had taken food out of the restaurant on November 28, 1989 without paying for it, in violation of company policy. Carter admits that he took food out of the restaurant but claims that he had signed a ticket, approved by assistant manager Alan Stabley, which indicated that he took the food and owed the restaurant for it. In the past, Barbour had permitted such charging of food against future pay, but prior to the incident in question, the restaurant had posted signs regarding its employee food policy, to the effect that food must be paid for and that the employee discount menu was to be used only before leaving the restaurant.
 
 
 5
 Barbour testified, and Carter believes, that a principal reason for his discharge, in addition to the taking of food, was the charges of sexual harassment made against him by two female co-workers. The sexual harassment incident took place on the same day that Carter had taken the food, and the two female co-workers told Barbour about it on November 30, 1989 and gave him written memoranda describing the sexual harassment, as well as documenting Carter's taking food out of the restaurant without paying for it. One female employee wrote that Carter grabbed her leg and bit it when she tried to kick him as a result of his smart remarks. He got the other female co-worker down on her knees and then "started humping her head," whereupon she fell backwards and Carter wrapped her legs around his waist and "started doing the same thing." Later that same day, Carter shoved one of the same female employees to the floor and leaned on top of her, and when the other female co-worker tried to help her up, Carter shoved her down on top of the other. Carter denies that he grabbed his co-worker's leg and bit it or grabbed the other's legs and wrapped them around his waist. The report of the EEOC officer investigating his Title VII charge relates, however, that Carter said he was " 'horseplaying' around with the females because that was the only way he could get them to work." He told the EEOC investigator that they were wrestling and attempting "karate contact" and that "he may have accidentally touched them in private areas." Carter claims that other employees have engaged in behavior such as biting each other on the shoulders, hitting each other with towels, and chasing each other around the restaurant, without being discharged. After Carter's discharge, Barbour told Stevens that he "finally got rid of that nigger." While Carter denies the incident and his conversation with the EEOC investigator, it is uncontradicted that the two female employees did complain, in writing, as to Carter's taking the food and sexual advances, which writings are in the record.
 
 
 6
 On April 25, 1990, Carter filed a charge of discrimination, limited to his discharge, with the Equal Employment Opportunity Commission (EEOC). The EEOC determined that no violation of Title VII occurred, since it determined that Carter was fired for attempting to charge his food and taking it from the restaurant without paying for it, in violation of company policy, and for sexually harassing two female co-workers. The EEOC, after reviewing the initial determination of no violation, issued Carter the requisite right-to-sue letter. Carter filed suit.
 
 
 7
 The district court entered partial summary judgment on behalf of Smithfield's on April 30, 1993 regarding Carter's Title VII hiring and promotion claims, since Carter failed to file those charges with the EEOC, and dismissed Carter's discriminatory discharge claim that was based on Sec. 1981. Those dismissals are not being appealed. The remaining claims are discriminatory discharge pursuant to Title VII and discriminatory hiring and failure to promote in violation of Sec. 1981.
 
 
 8
 The district court granted summary judgment to the defendants on the remaining claims and dismissed the case as to all defendants.[4]
 
 I.
 
 9
 In making out a prima facie case of race discrimination in the failure to hire or promote, pursuant to 42 U.S.C. Sec. 1981, sufficient to defeat summary judgment in favor of the employer, the plaintiff must establish: that he is a member of a protected group; he applied for the position in question; he was qualified for the position; and he was rejected for the position in favor of someone not a member of the protected group under circumstances giving rise to an inference of unlawful discrimination.[5] See Alvarado v. Board of Trustees of Montgomery Community College, 928 F.2d 118, 121 (4th Cir.1991). Carter, except for his inability to close the restaurant, has established a prima facie case, since Barbour's deposition may be construed to establish that at least one white person was hired as an assistant manager during the period between Carter's hiring and his August promotion to assistant manager. See note 3, supra. However, Barbour articulated a legitimate nondiscriminatory reason for not hiring Carter as an assistant manager, i.e. he was unavailable to close the restaurant at night due to his second job.[6] This assertion rebuts any presumption established by the prima facie case, and the plaintiff then must offer evidence that the proffered reason was not the true reason for the employment decision and that race was. See St. Mary's, 61 U.S.L.W. at 4783. Even if the plaintiff successfully shows that the reason proffered by the employer is false, he still bears the ultimate burden of proving that the employer intentionally discriminated against him because of his race. St. Mary's, 61 U.S.L.W. at 4784. At the summary judgment stage, this burden obliges the plaintiff to have sufficient evidence supporting his claim that the employer's decision was racially motivated so that a genuine issue of fact exists." [A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." Williams v. Cerberonics, Inc., 871 F.2d 452, 456 (4th Cir.1989).
 
 
 10
 In this instance, however, Carter has offered no evidence that rebuts Smithfield's proffered reason that Carter was not initially hired as an assistant manager because he was unavailable to close the restaurant. Although Carter stated in his affidavit that he would have been willing to close the restaurant if his duties as an assistant manager required it, such an assertion in no way undermines the employer's proffered reason, creating a genuine issue of fact, where it is not communicated to the employer. Cf. Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir.1985) ("Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice"). Furthermore, even if Carter succeeded in rebutting the proffered reason, he is left with no evidence connecting the employer's action with racial bias. The most telling evidence to the effect that racial bias was not a motivating factor in the employer's not hiring Carter immediately into an assistant manager's position is the fact that it did promote him to that position within six months of his hire. We are of opinion that Carter failed to rebut Smithfield's legitimate nondiscriminatory reason for not initially hiring Carter as an assistant manager and, therefore, summary judgment in favor of the employer on Carter's discriminatory hiring or promotion claim was proper.
 
 II.
 
 11
 Carter's Title VII claim for discriminatory discharge fares no better. To make out a prima facie case of discriminatory discharge under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e et seq., the plaintiff must demonstrate that he is a member of a protected class; he was qualified for his job and his job performance was satisfactory; in spite of his qualifications and performance, he was fired; and, the position remained open to similarly qualified applicants after his dismissal. See Alvarado, 928 F.2d at 122.
 
 
 12
 Assuming for argument that Carter has demonstrated a prima facie case of discriminatory discharge, Smithfield successfully rebutted that case by showing that Carter was fired for directly violating the posted food policy of the restaurant and that he would have been fired anyway for his conduct with respect to the female employees, which, as described by them, was rude and licentious, but which was described by him as horseplay.
 
 
 13
 There is no doubt that the posted policy of the restaurant was that all food would be paid for and would only go to an employee who was working a shift and was to be consumed in the restaurant. Despite this, on the day that he was fired, Carter took a bag full of food out of the restaurant without paying for it, having initialed the meal ticket with Stabley's approval. Stabley, however, had no authority to give the approval, as he is bound to have known. Indeed, Carter, without authority, told Stabley at the time that Barbour had approved his (Carter's) charging of food. Stabley, in his unsworn written statement, even admits that the ticket Carter states he signed for the food could not be found upon inquiry. There is no refutation of this incident, and it is a rebuttal of any prima facie case of unlawful discharge that Carter may have established. The affidavit of Carter, that white employees were treated differently, does not claim that white employees were treated differently following the posting of the food policy. Neither does it name them. The affidavit of another employee, that the policy of charging food was followed after the notice was posted also does not name anyone who participated in it.
 
 
 14
 The only subterfuge engaged in by the defendants with resect to Carter's firing was not giving him at the time, as a reason for his discharge, his sexual advances to the two female employees who had complained to Barbour prior to his being fired. Even if this subterfuge should have been explained to Carter at the time, it had nothing to do with his race, rather with the incident involving the sexual harassment of the two female employees. The two women involved did not want attention brought upon them.
 
 
 15
 The only evidence pertaining to Carter's race with respect to his employment is the racial slur Barbour spoke to one Stevens at some indeterminate date after Carter was fired. We do not in any way condone Barbour's remark to Stevens, but that remark is not sufficient to rebut the nondiscriminatory reasons for Carter's termination. See Williams, 871 F.2d at 452, 456.
 
 
 16
 The judgment of the district court is accordingly
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 Smithfield Management controlled certain management functions for a number of Smithfield restaurants, including the Morehead City, North Carolina location which was owned by Smithfield. Gregory Moore is president of both corporations. TKB Industries, Inc. is a corporation wholly owned by Terry Barbour, former manager of the Morehead City Smithfield's restaurant, which purchased the restaurant subsequent to the activities which are the subject of this case
 
 
 [2]
 Carter's complaint says he was hired in February of 1989 and Smithfield's records reflect that he was hired on March 4, 1989. Since Smithfield's records reflect that a white male was hired as an assistant manager after March 4, 1989, but prior to Carter's promotion to assistant manager, this factual discrepancy is not material to Carter's ability to present a prima facie case
 
 
 [3]
 We have strained here in favor of the plaintiff. Smithfield's records show that Elliott was hired as an assistant manager-trainee, not assistant manager. The transcript shows that he may have been hired as an assistant manager
 
 
 [4]
 The district court order noted that TKB had filed a separate motion for summary judgment and dismissed the case as to all defendants. Thus, any contention that the district court did not rule on TKB's motion for summary judgment is in error
 
 
 [5]
 See St. Mary's Honor Ctr. v. Hicks, --- U.S. ----, 61 U.S.L.W. 4782, 4783 n. 1 (U.S. June 25, 1993) (characterizing Patterson v. McLean Credit Union, 491 U.S. 164 (1989) as applying the Title VII framework to claims brought under 42 U.S.C. Sec. 1981)
 
 
 [6]
 Availability to close the restaurant might be considered one of the qualifications for the job and a plaintiff be required to show his availability for closing as part of his prima facie case. We have analyzed that fact, however, as an additional nondiscriminatory reason advanced by the employer for his decision not to hire Carter as an assistant manager. The district court just as properly concluded that a prima facie case had not been established