**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PEGGY S. JOHNSON,
<u>Plaintiff-Appellant,</u>

v.

No. 96-1920

MARVIN RUNYON, Postmaster
General, United States Postal
Service,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CA-94-3415-AMD)

Argued: March 5, 1998

Decided: June 8, 1998

Before WILKINS and HAMILTON, Circuit Judges, and
BROADWATER, United States District Judge for the
Northern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** W. Michel Pierson, Baltimore, Maryland, for Appellant.
Charles Joseph Peters, Sr., Assistant United States Attorney, Balti-
more, Maryland, for Appellee. **ON BRIEF:** Lynne A. Battaglia,
United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Peggy S. Johnson appeals from the district court's grant of summary judgment in favor of the Postmaster General in her employment discrimination action alleging racial, gender, and retaliatory discrimination, and sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) (1994). We have reviewed the briefs and record in this case, and we have heard oral argument. We conclude that the district court's decision was correct, and finding no reversible error, we affirm.

I.

Peggy S. Johnson ("Johnson") is an African-American female who began her career with the Postal Service in 1976. Over the years, Johnson progressed through the Postal Service hierarchy, achieving the position of General Supervisor (EAS-17) in August 1986. As a General Supervisor, Johnson received "Very Good" evaluations in 1988, 1989, 1990, and 1993, but only a "Good" evaluation in 1991 and 1992. As a result, between 1990 and 1993, Johnson filed four complaints, later consolidated, with the Equal Employment Opportunity (EEO) office. Johnson claimed that despite the quality of her performance, the Postal Service unlawfully denied her promotion and career advancement opportunities. In her consolidated EEO claims, Johnson alleged discrimination based on her race, gender, and retaliation for her prior EEO activity. On a hearing before an administrative law judge on April 13, 1994, and April 19, 1994, the EEO found that Johnson failed to prove that the Postal Service had engaged in unlawful discrimination. On December 8, 1994, Johnson filed a complaint in the United States District Court for the District of Maryland, reiterating the same four claims. During the period relevant to this case, Johnson was employed at the Main Post Office in Baltimore, Mary-

2

land. Johnson asserted four claims in her complaints, each claim involving a discrete set of facts.**1**

II.

We review the district court's grant of summary judgment <u>de novo</u>. <u>Shaw v. Stroud</u>, 13 F.3d 791 (4th Cir. 1994). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (quoting Fed.R.Civ.P. 56(c)). For purposes of summary judgment, a fact is material if when applied to the substantive law, it affects the outcome of litigation. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). In determining whether a genuine issue of material fact is in dispute, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Id</u>. at 255. <u>See also Miltier v. Beorn</u>, 896 F.2d 848 (4th Cir. 1990).

III.

In her first cause of action, Johnson claims denial of promotion to the position of Tour Superintendent, D.A. in 1990. In August 1990, the Postal Service announced two vacancies for the position of Tour Superintendent, D.A. (EAS-19), in the Baltimore, Maryland Post Office. Johnson, along with five other candidates submitted applications to the vacancy.**2** A Promotion and Advisory Board ("Board") found the six candidates to "best meet" the requirements of the Tour

_____

**1** In the first cause of action, Johnson claims denial of promotion to the position of Tour Superintendent, D.A. in 1990. In the second cause of action, Johnson claims she was subject to sexual discrimination and sexual harassment in 1990 and 1991 by John Knott, her supervisor, resulting in false and improper evaluations and recommendations and resulting in serious emotional distress and physical injury. In the third cause of action, Johnson claims that she received an inaccurate and undeserved rating of "Good" on her performance evaluation in 1992, in retaliation for her prior EEO activity. In the fourth and last cause of action, Johnson claims denial of placement in the Management Progression Program and consequent denial of opportunity for promotion in reprisal for her exercise of protected rights.

**2** The candidates were: Peggy S. Johnson (African-American female); Roy Hayward (white male); Ralph Hooper (African-American male); Anthony Pasko (white male); Eugene Pawloski (white male), and Rodney Thorington (African-American male).

Superintendent, D.A. position. In September 1990, the Board selected John Knott ("Knott"), a white male, for the first vacancy, even though he was not among the six candidates recommended by the Board.**3** In November 1990, the Board selected Eugene Pawloski ("Pawloski") for the second vacancy. Johnson claims that as a result of the Postal Service's discriminatory actions she has been deprived of wages and other employment benefits and has suffered emotional distress and mental anguish.

To establish a prima facie case of race and sex discrimination, Johnson must show that

> (1) [s]he is a member of a protected group;
>
> (2) [s]he applied for the position in question;
>
> (3) [s]he was qualified for the position; and
>
> (4) [s]he was rejected for the position in favor of someone not a member of the protected group under circumstances giving rise to an inference of unlawful discrimination.

Alvarado v. Board of Trustees of Montgomery Community College, 928 F.2d 118, 121 (4th Cir. 1991); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Because the Postal Service concedes that Johnson satisfies all the prima facie elements in Alvarado, the burden of production shifts to the Postal Service to rebut the inference of discrimination with legitimate, nondiscriminatory reasons for the employment decision. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981); McNairn v. Sullivan, 929 F.2d 974 (4th Cir. 1991).**4** If the Postal Service succeeds in rebutting the pre-

_____

**3** In May 1990, Knott was Eastern Region Automation Adviser (EAS-23) assigned to Philadelphia when he requested to be reassigned to Baltimore for the Tour Superintendent position (EAS-19.)

**4** To reinforce her argument that the employment decision taken by the Postal Service was discriminatory, Johnson uses statistical data from an affirmative employment program prepared by the Postal Service for fiscal years 1991-1992, to show that the number of African-American

4

sumption, the burden of production shifts back to Johnson that must show that the Postal Service explanation is pretextual and that the employment decision was indeed discriminatory. See Reinhold v. Commonwealth of Virginia, 1998 WL 45247 (4th Cir. 1998) (citing Spencer v. General Elec. Co., 894 F.2d 651, 658 (4th Cir. 1990)).

The Postal Service presented legitimate nondiscriminatory reasons for its decision to hire two white males for the vacancies. The Postal Service met their burden of production by showing that both males were better qualified for the position than Johnson. McDonnell at 802. When the burden shifted back to Johnson to show that the reasons articulated by the Postal Service were pretextual, she failed. Texas at 252. Johnson subjectively believed that she was more qualified than Pawloski and Knott, but did not provide specific objective instances to show that she was more qualified than Pawloski. Therefore, Johnson's argument based solely on her subjective belief of discrimination fails. As the district court explained, in discrimination cases, "a subjective belief of discrimination, however genuine,[cannot] be the basis of judicial relief." Moore v. Reese, 817 F.Supp 1290, 1295 (D.Md. 1993) (quoting Elliott v. Group Med. & Surgical Serv., 714 F.2d 556, 557 (5th Cir. 1983).

Next, Johnson alleges that the Board violated Postal Service procedure by reassigning Knott to one of the Tour Superintendent's vacancies, when Knott's candidacy was not initially considered by the Board. We accept the Postal Service explanation that Knott's selection was in accordance with Postal Service procedure.[5]

_____

females in level EAS-19 positions and above in Baltimore was particularly small at the time of the survey. According to the report, this under-representation was the product of historical exclusion and inadequate training. The reports produced by the Postal Service show that even though females make about 40% of all career employees, the proportion of females in level EAS-19 and above (11.5 to 21.4%) was lower than the proportion of females in levels EAS 15-18 (31.4 - 36.2%). In addition, African-American females were under represented in level EAS-19 and above (4.5%), as compared to white females (7.3%).

[5] The Postal Service Handbook at§ 543.2 provides, in pertinent part, that "[t]he competitive procedures ... do not have to be followed when management initiates or an employee requests a reassignment to a position at the same grade or when an employee voluntarily accepts or requests, in writing, a position at a lower grade."

5

In the second cause of action, Johnson claims she was subject to sexual discrimination and sexual harassment in 1990 and 1991 by John Knott, her supervisor, resulting in false and improper evaluations and recommendations and resulting in serious emotional distress and physical injury. From February 1990 to January 1990, Johnson worked as Acting Tour Superintendent at the Wilmington, Delaware, Post Office. Between March 22, 1990 until May 28, 1990, Knott was Johnson's supervisor. Johnson alleges that during this period, Knott made repeated and unwelcome sexual advances including touching and kissing, and sexual comments.**6** Upon her return to Baltimore in January 1991, Johnson came again under Knott's supervision. Johnson alleges that Knott resumed his inappropriate conduct. Some time after April 1991, Plaintiff told Knott for the first time that his conduct was unwelcome and inappropriate. (J.A. at 267.) Johnson alleges that after this incident, Knott began a "campaign of harassment." (J.A. at 11.) As part of this campaign, Johnson alleges that Knott gave her a rating of "Good" on her performance evaluation for fiscal year 1991. She also alleges that in November 1991 Knott failed to recommend her for the position of Tour Superintendent, a position Johnson applied for in May 1991. Johnson claims that as a result of Knott's sexual harassment she suffered "traumatic shock and injury to her nervous system, causing serious emotional distress and physical manifestations, such as sleeplessness, loss of appetite, and skin rashes." (J.A. at 12.)

Under Title VII, it is unlawful for an employer"to discriminate against an individual with respect to . . . terms, conditions, or privileges of employment because of such individual's . .. sex." 42 U.S.C. § 2000e-2(a)(1). Quid pro quo sexual harassment is one of the two forms of workplace sexual harassment recognized under Title VII.**7**

_____

**6** In her Administrative Testimony, Johnson states that Knott made sexually explicit comments like "you sure ought to try this, this is probably the best thing you ever had." (J.A. at 251.)

**7** Traditionally, courts have differentiated between quid pro quo and hostile work environment claims under Title VII. See Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986). However, the distinctions between the two forms of claims become muddled when the harassment is perpetrated by a supervisor. See Jansen v. Packaging Corp. of America, 123 F.3d 490 (7th Cir. 1997), cert. granted in part, 118 S.Ct. 876 (1998).

6

Hartsell v. Duplex Prods. Inc., 123 F.3d 766 (4th Cir. 1997). In quid pro quo sexual harassment, "an employer conditions, explicitly or implicitly, the receipt of a job benefit or a tangible job detriment on the employee's acceptance or rejection of sexual advancements." Reinhold at 10 (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57 (1986); Spencer v. General Elec. Co., 894 F.2d 651 (4th Cir. 1990)). To establish a prima facie case of quid pro quo workplace sexual harassment, Johnson must show that:

> (1) the employee belongs to a protected group;

> (2) the employee was subject to unwelcome sexual harassment;

> (3) the harassment complained of was based on sex;

> (4) the employee's reaction to the harassment affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment; and

> (5) the employer knew or should have known of the harassment and took no effective remedial action.

Reinhold at 12 (citing Spencer, 894 F.2d 651, 658).

To establish a prima facie case of quid pro quo sexual harassment, Johnson must present evidence to support each requirement of the test. Because Johnson was harassed by her supervisor, the fifth requirement of the test is automatically satisfied. Spencer, 894 F.2d 651.

Even if Johnson presented enough evidence to support the first three requirements,**8** Johnson failed to prove that she was "affected on tangible aspects of the employee's compensation, terms, conditions, or privileges of employment." Spencer at 658. The record shows that

_____

**8** In its appellate brief, the Postal Service does not concede that Johnson met the second and third requirements of her prima facie case, namely, that she failed to show that she was subject to unwelcome sexual harassment and that the harassment complained of was based on sex.

7

Knott was critical of Johnson's performance prior to Johnson's rejection of Knott's sexual advances. Besides, even if Johnson had met her initial burden of production and established a prima facie case, the Postal Service articulated a legitimate nondiscriminatory reason for Johnson's evaluation and recommendation. In her appellate brief, Johnson conceded that in a May 1991 evaluation, after Johnson had repudiated Knott's sexual advances, Knott praised Johnson's achievements and highly recommended her for the Tour Superintendent position.[9]

In the third cause of action, Johnson claims that she received an inaccurate and undeserved rating of "Good" on her performance evaluation in 1992, in retaliation for her exercise of protected rights. The 1992 evaluation covered the period from August 10, 1991 to August 7, 1992. In 1991, Johnson filed several complaints with the EEO. During this period, Johnson also filed several grievances and appeals with the United States Postal Service. (J.A. at 502-11.)

Johnson based her assertions of retaliation on a memo Knott wrote to supervisors in 1992. In that memo, Knott stated that "using . . . EEO as a vehicle to complain reflects negatively upon your ability as a manager to confront problems with the appropriate manager." (J.A. at 529.) Johnson claims that she deserved a rating of at least "Very Good" and that she was downgraded because Knott knew of her multiple complaints and appeals with EEO and the Postal Service.

_____

[9] According to the evaluation signed by Knott, "General Supervisor Peggy Johnson has worked under my direction as an Acting Tour Superintendent in Wilmington, DE and as a General Supervisor at the Baltimore GMF ... She has demonstrated the ability to be a leader and capable (sic) of interpreting/achieving the organizational objectives and goals. In Wilmington DE her commitment and dedication towards her job reflected in positive performance and service results. Productivity increased on the FSM by 125 ocs per manhours. The thru-put increased by 20% on the FSM using the domino method. The General Supervisor and Supervisors look to her for direction, guidance and support with their daily responsibilities. Her recent detail has indicated that she has the knowledge, education and commitment to strive for excellence. She definitely possesses the potential to be Tour Superintendent (EAS-20.). Therefore, I recommend her to the position without reservation." (J. A. at 209-10.)

8

We disagree. In order to prevail, Johnson must "follow the same sequence of proof that she was required to follow in her discrimination claim." Williams v. Cerberonics, Inc. , 871 F.2d 452, 457 (4th Cir. 1989). Even if Johnson makes a prima facie case on her retaliatory claim,[10] Johnson failed to show that Joseph Wells's ("Wells") actions as her supervisor, were retaliatory.[11] Carter v. Ball, 33 F.3d 450 (4th Cir. 1994). First, even though the district court found that Wells was aware of Johnson's prior EEO activities, this inference alone is not enough to show retaliatory intent. Id. at 450; (J.A. at 639.). Besides, Wells gave "Good" evaluations to all general supervisors evaluated by him in 1992. (J.A. at 639.) Second, Knott was Johnson's supervisor for only a portion of the period in which Johnson received her 1992 evaluation. Thus, even if Knott had an input in her 1992 evaluation, as Johnson asserts, we accept Knott's explanation that he contacted Wells to "furnish him with a copy of her goals." (J.A. at 114.) Therefore, the district court properly granted summary judgment to the Postal Service as to this retaliatory claim.

In the fourth and last cause of action, Johnson claims that she was denied placement in the Management Progression Program ("Program") and consequently was denied opportunity for promotion in retaliation for her prior EEO activity. The Program had the dual purposes to fill managerial vacancies within the Postal Service and to provide a career path to those employees affected by Postal Service restructuring plan.[12]

_____

[10] To prevail, Johnson must show that "(1) [s]he engaged in protected activity; [2] that h[er] employer took adverse employment action against h[er]; and (3) that there was a sufficient causal connection between the protected activity and the adverse employment action." Hopkins v. Baltimore Gas & Elec. Co., 871 F.Supp. 822, 836 (D.Md. 1994) (citing McNairn v. Sullivan, 929 F.2d 974, 980 (4th Cir. 1991).

[11] Knott was Johnson's supervisor until December 1991. Knott was replaced by Joseph Wells, who was Johnson's supervisor for the remaining of the period and who signed the 1992 evaluation report (J.A. at 59-67.).

[12] Employees selected for the Program would be placed initially at level EAS-20, eventually progressing to level EAS-22 upon completion of training, and finally to level EAS-24. (J.A. at 640.)

In 1993, Peter Bernard ("Bernard"), the selecting agent, notified all former General Supervisors (EAS-17) that the Program had five vacancies for Manager, Distribution Operations (EAS-24). A committee interviewed and rated twelve candidates, Johnson among them. The committee sent a list to Bernard of the seven best candidates, including Johnson. However, Johnson was not among the five candidates selected by Bernard for the five Manager, Distribution Operations (EAS-24) positions.[13] Johnson alleges that Knott and Bernard were involved in a concerted effort to exclude her from the Program because of her prior EEO activity. Assuming, arguendo that Johnson proved a prima facie case by creating an issue of fact concerning whether Bernard, the selecting official, knew of her protected activity, we conclude that Johnson failed to provide evidence to support her claim that she was more qualified than those selected and therefore failed to create an issue of fact regarding whether Bernard's articulated nondiscriminatory reasons for his decision were pretextual.

For the reasons stated above, we conclude that the district court correctly granted the Postal Service's motion for summary judgment as to Johnson's four claims.

AFFIRMED

_____

[13] Bernard selected two African-American males (Tom Leeper and Terry Powers), two African-American females (Patricia Burton and Beverly Wade), and one white male (Earl Lang) for the Manager, Distribution Operations (EAS-24) positions. (J.A. at 641.)

10