Lenora MCNEIL, Plaintiff,

v.

SCOTLAND COUNTY, a body politic
and incorporate, Defendant.

No. COV/1:01–CV–00388.

United States District Court,
M.D. North Carolina.

May 24, 2002.

Carmen Jean Battle, James H. Locus, Jr., Fayetteville, NC, for Plaintiff.

David L. Woodard, Cecil W. Harrison, Jr., Poyner & Spruill, LLP, Raleigh, NC, for Defendant.

---

*MEMORANDUM OPINION*

BULLOCK, District Judge.

On April 11, 2001, Plaintiff Lenora McNeil ("Plaintiff") filed this action against her employer Defendant Scotland County Department of Social Services ("Defendant"). On September 25, 2001, Plaintiff filed a second amended complaint against Defendant, alleging that Defendant failed to promote her and wrongfully discharged her based on retaliation[1] in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), Defendant failed to reasonably accommodate her alleged disability in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"), and Defendant wrongfully discharged her in violation of the North Carolina Equal Employment Practices Act, N.C. Gen.Stat. § 143–422.1 *et seq.* ("NCEEPA").

This matter is before the court on a renewed motion to dismiss and to strike and a motion for summary judgment by Defendant. For the following reasons, the court will grant Defendant's motion for summary judgment and will grant the renewed motion to dismiss the NCEEPA claim. The court will deny the renewed motion to strike as moot.

PROCEDURAL BACKGROUND

Plaintiff filed this action on April 22, 2001, asserting claims of retaliatory failure to promote and wrongful discharge in violation of Title VII, wrongful discharge in violation of NCEEPA, intentional infliction of emotional distress, and negligent infliction of emotional distress. Plaintiff also sought punitive damages. Plaintiff filed

---

1. In Plaintiff's second amended complaint, Plaintiff also averred that Defendant wrongfully terminated Plaintiff because of her race. Plaintiff failed to address racial discrimination in any brief, and therefore any claim based on race fails as a matter of law.

an amended complaint on June 25, 2001, asserting no new causes of action.

On May 24, 2001, Defendant served motions requesting the court to dismiss or to strike Plaintiff's state law claims, her claim for punitive damages, the "Damages" claim, and the federal wrongful discharge claim. Following responses and reply briefs, the court entered an order on August 9, 2001, allowing Plaintiff to request a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") with respect to the federal wrongful discharge claim.

After receiving a right-to-sue letter, Plaintiff filed a second amended complaint on September 25, 2001, alleging failure to promote and wrongful discharge based on retaliation in violation of Title VII, disability discrimination in violation of the ADA, and wrongful discharge in violation of the NCEEPA. Plaintiff abandoned her punitive damages claim and all state claims, except the NCEEPA claim.

## FACTS

### A. *Plaintiff's Work History*

The following facts, except where noted, are undisputed. Based essentially on her own unsupported opinions, Plaintiff disputes Defendant's characterization of her work performance and qualifications.

In February 1995, Defendant hired Plaintiff to serve as a Clerk Assistant III in the Medicaid unit. Following a six-month probationary period, Plaintiff became a permanent employee in August 1995. After Plaintiff became a permanent employee, her performance declined. On October 25, 1995, Plaintiff's supervisor, Joe Knott, issued Plaintiff a formal verbal warning concerning her poor attitude toward co-employees and clients. Although it was one of Plaintiff's job responsibilities, Plaintiff admits telling a caseworker to type her own Medicaid card, but denies having a poor attitude toward co-employees. Plaintiff's performance improved temporarily after the formal warning.

Because Plaintiff expressed a desire to become a caseworker and she lacked the relevant experience, Knott assigned Plaintiff to an Income Maintenance Technician I position in the spring of 1997. In addition to her clerical duties, Plaintiff was responsible for Medicaid eligibility reviews and client intake reviews.

On November 4, 1997, Defendant completed Plaintiff's only formal, written evaluation. Plaintiff received an overall "B" rating, defined as "meets job requirement." (Pl.'s Aff. Ex. 10.) Although Plaintiff made "great improvement as a team player", Plaintiff needed to improve her constructive use of time and take on more responsibility regarding the Illinois Medicaid program and fraudulent claims. (Pl.'s Ex. 10.)

Despite the improvements noted in Plaintiff's November 4, 1997, evaluation, Plaintiff failed to exhibit the ability to work as a team member and get along with co-workers. Plaintiff consistently projected a negative attitude toward her supervisors and co-employees. Plaintiff's attitude and inability to work as a team member caused significant problems. For example, Plaintiff's negative attitude caused several caseworkers to choose to perform tasks that Plaintiff should have been performing rather than ask Plaintiff for assistance. In June 1999, Eva Locklear, Plaintiff's supervisor from January 1999 to June 2000, met with Plaintiff to discuss ways in which Plaintiff could project a more positive attitude and improve her relationship with co-employees.

Defendant also alleges that Plaintiff did not effectively manage her time and was inefficient. On May 22, 1998, Knott issued Plaintiff a written warning noting that Plaintiff needed to manage her time more effectively. Furthermore, Plaintiff stated

in an open meeting with a visitor present that "[she] did not know what [her] job was." (Knott Aff. Ex. 7.) In an effort to improve Plaintiff's efficiency, Locklear prepared a schedule of daily job functions for Plaintiff to follow.

Plaintiff's performance as an income maintenance technician was "lackluster, at best." (Knott Aff. ¶ 6.) When conducting eligibility interviews of Medicaid applicants, Plaintiff frequently failed to obtain all required information, causing unnecessary delays in processing Medicaid applications. After Defendant repeatedly asked Plaintiff to seek guidance from her supervisors in approving and denying Medicaid applications, Plaintiff refused to do so, which resulted in the erroneous disposition of numerous Medicaid applications. When errors were detected and returned to Plaintiff for correction, she would not acknowledge the errors and would not make the corrections. Plaintiff also took an inordinate amount of time to distribute Medicaid applications to the intake workers for processing. Furthermore, Plaintiff failed to follow instructions on several occasions in approving deductible cases and incorrectly authorized several cases. As a result of Plaintiff's mistakes, the State of North Carolina fined Defendant. On April 27, 2000, Locklear issued Plaintiff a written warning for failing to follow instructions while approving deductible cases.

Plaintiff, on the other hand, disputes the merits of Defendant's evaluation. Plaintiff contends that Locklear "commended [her] for doing a caseworker's job." (Pl.'s Aff. Ex. 20.) Plaintiff also alleges that Defendant did not properly train her and wrongly accused her of failing to notify Locklear of a penalty in a deductible case, which resulted in Defendant being fined by the state. Furthermore, Plaintiff relies on statements from two co-employees. Jan–Marie Fesmire, the employee responsible for the administrative duties related to vacant positions, testified that Plaintiff met the initial qualifications for a caseworker position, which is not disputed. Valeria Ann McDuffie also averred that Plaintiff was qualified for a caseworker position and that, although Plaintiff did not speak to co-employees often, Plaintiff was able to communicate with other employees. However, Plaintiff essentially relies on her own unsupported opinions to challenge Defendant's evaluation.

In August 1998, Plaintiff applied for caseworker positions in the Medicaid and Food Stamps units. Defendant did not select Plaintiff for either promotion, and Plaintiff initially filed an internal grievance addressed to Knott and subsequently filed a charge of discrimination with the EEOC alleging racial discrimination. Neither of these failed promotions is before the court.

Thereafter, between April 1999 and November 1999, Plaintiff applied for several promotions. Defendant did not select Plaintiff for any promotion, and Plaintiff attributed a retaliatory motive to Defendant's decisions and filed charges of discrimination with the EEOC in each instance she was denied a promotion.

## B. Failed Promotions—April, July, and August 1999

Plaintiff applied for three promotions between April and August 1999. In April 1999, Plaintiff applied for a caseworker position in the Medicaid unit. On April 22, 1999, Plaintiff interviewed for the position with Locklear (Plaintiff's supervisor), Cheryl Primus (lead worker in the Medicaid unit), and Knott (Plaintiff's former supervisor). In July 1999, Plaintiff interviewed for a caseworker position in the Food Stamp unit with Linda Boyer (supervisor of the Food Stamp unit) and Knott. In August 1999, Plaintiff interviewed for a caseworker position in the Medicaid unit with Locklear and Knott. Plaintiff was

not selected for any of these promotions, and on October 6, 1999, filed a charge of discrimination with the EEOC alleging retaliation for filing previous charges of discrimination against Defendant. The EEOC issued Plaintiff a right-to-sue letter on January 8, 2001, which Plaintiff received on January 11, 2001. Plaintiff filed this action within ninety (90) days of receipt of the right-to-sue letter.

Defendant contends that Plaintiff was not promoted because she was less qualified than the applicants selected for promotion. In making its decision, relevant factors included the following: (1) the attitude applicants projected in the interview and their answers to the questions posed; (2) prior work performance and work experience; (3) the ability of applicants to interact with co-employees and the general public, which is required for a caseworker position; (4) communication skills; and (5) demonstrated or projected initiative and ability to work on an independent basis.

Defendant alleges that based on Plaintiff's work history and experience she was not as qualified as other applicants who were selected for the promotions at issue. Plaintiff performed poorly on an initial eligibility test required for caseworker applicants.[2] Second, as discussed above, Plaintiff's inefficiency, inability to interact with supervisors, co-employees, and the general public, and lack of progress and performance as an income maintenance technician affected Defendant's decision not to promote Plaintiff. Plaintiff's inability to work on an independent basis as an income maintenance technician was also a factor in Defendant's decision not to promote Plaintiff.

Moreover, Plaintiff did not perform well in the interviewing process. Defendant places critical importance on the interview results. Knott, Plaintiff's supervisor, interviewed all applicants for the April, July, and August 1999 caseworker positions. At each of these interviews, Knott, as well as other personnel, asked all applicants the same questions. Plaintiff projected a negative attitude during the interview and gave vague responses to questions.

Defendant contends that Janice Morrison, Felisa Lockey, and Ethena Locklear, applicants selected for the April, July, and August 1999 caseworker positions, respectively, were more qualified than Plaintiff. Defendant alleges that each of the applicants gave impressive, clearly thought out, and enthusiastic responses to interview questions. In addition, these applicants' respective prior work histories and experiences were factors in the decision-making process. Both Lockey and Locklear had social service agency experience, and Morrison had been a local government employee in a position that required significant interaction with the public and with financial matters.

### C. Failed Promotion—October 1999

On October 14, 1999, Plaintiff applied for another caseworker position in the Medicaid unit. Despite the fact that Plaintiff did not interview for this position, Plaintiff received a letter from Defendant on November 9, 1999, thanking Plaintiff for interviewing for the position and informing her that another applicant was selected.

Defendant alleges that the letter was an inadvertent mistake. It is standard practice for Defendant to notify unsuccessful in-house applicants before the successful candidate is announced. Fesmire alleges that she mistakenly used the master letter on the computer thanking unsuccessful applicants for interviewing. This incorrect

---

**2.** The particular test results are not directly related to the applications for caseworker positions that are at issue in this case; Plaintiff's

performance, however, is indicative of her qualifications.

letter was erroneously delivered to three employees, including Plaintiff. Upon Plaintiff notifying Fesmire about the incorrect letter, Fesmire apologized and issued a corrected letter to each of the three employees.

Defendant alleges that Plaintiff was not selected for an interview because she did not have sufficient experience for the position, particularly when compared to the applicant who filled the position. Sandra McNeil, the applicant selected for the position, had been employed with Defendant for approximately ten (10) years as a caseworker and had an excellent work history as a caseworker.

Plaintiff contends that she was not selected for this promotion based on alleged retaliation for filing previous claims of discrimination. On February 29, 2000, Plaintiff filed a charge of discrimination with the EEOC. The EEOC issued a right-to-sue letter on January 8, 2001, which Plaintiff received on January 11, 2001. Plaintiff initiated this action within ninety (90) days of receipt of the right-to-sue letter.

### D. *Failed Promotion—November 1999*

On November 10, 1999, Plaintiff requested that her application be submitted for a caseworker position in the Food Stamp unit. When Fesmire reviewed Plaintiff's application on that same date, she noticed that it was outdated and not eligible for consideration. Fesmire attempted to contact Plaintiff on November 10 to notify her of this problem, but was unsuccessful. Fesmire, however, drafted a letter to Plaintiff stating that she needed to update her application. Fesmire attempted to hand-deliver the letter to Plaintiff by the end of the workday on November 10, but Plaintiff was not at her desk. Fesmire was not in the office on November 11, 1999 (a state holiday, Veterans Day) and November 12, 1999 (a vacation day), so she asked a co-employee to hand-deliver the letter to Plaintiff on November 12, 1999. Fesmire also told the co-employee that if she could not personally deliver the letter to Plaintiff on November 12 she should mail the letter to Plaintiff's home address because Plaintiff was starting family medical leave on November 15, 1999. Plaintiff was not in the office on November 12, 1999, and Defendant therefore mailed the letter to her. Plaintiff did not submit a renewed application for the position and was not considered for the position.

Plaintiff alleges that Defendant intentionally delayed notifying her that the application was outdated knowing that Plaintiff would be on family medical leave from November 15 to November 24, 1999. Plaintiff alleges that she did not leave the office until 6:00 p.m. on November 10, 1999. Plaintiff also contends that in the past Fesmire left letters on her desk and left messages on Plaintiff's voicemail, but failed to do so on November 10, 1999. On February 29, 2000, Plaintiff filed a charge of discrimination with the EEOC. The EEOC issued a right-to-sue letter on January 8, 2001, which Plaintiff received on January 11, 2001. Plaintiff initiated this action within ninety (90) days of receipt of the right-to-sue letter.

### E. *Discharge*

Plaintiff applied and Defendant granted leave pursuant to the Family Medical Leave Act ("FMLA") on June 8, 2000. Beginning on June 8, 2000, and continuing until September 8, 2000 (with the exception of the time period July 5 through July 12, 2000), Plaintiff was on FMLA leave. Plaintiff was not prepared to return to work in September, and Defendant agreed to place her on unpaid leave until October 31, 2000. Thus, from September 9, 2000, through October 31, 2000, Plaintiff was on unpaid extended leave of absence after Plaintiff exhausted her full FMLA leave

benefits. During this time period (with the exception of July 5 through July 12, 2000), Plaintiff performed no work for Defendant.

On August 16, 2000, Fesmire wrote Plaintiff a letter advising Plaintiff that her FMLA leave would expire on September 8, 2000, and providing Plaintiff additional information about extended leave without pay. On September 6, 2000, Fesmire again wrote Plaintiff concerning the same information.

Subsequent to the two letters dated August 16 and September 6, 2000, Plaintiff's daughter, Antwannia McQueen, notified Defendant that she was given permission to speak on her mother's behalf and requested Defendant not speak to Plaintiff directly and to address all correspondence to: Lenora McNeil, c/o Sally McNeil (Plaintiff's mother), 1006 Shaw Street, Laurinburg, North Carolina. At all times after September 8, 2000, Defendant did not speak directly to Plaintiff and mailed all correspondence in care of Plaintiff's mother as instructed.

On September 11, 2000, Defendant received a fax from Rosalyn Harris–Offutt, Plaintiff's healthcare provider. Harris–Offutt diagnosed Plaintiff as experiencing a "major depressive episode and severe melancholia," which are symptoms of post-traumatic stress disorder. (Fesmire Aff. Ex. 16.) In September 2000, Harris–Offutt indicated that the approximate duration of this condition would be six (6) months from August 12, 2000. Harris–Offutt later stated that "[s]ome symptoms may persist throughout [Plaintiff's] lifetime," (Second Am. Compl. Ex. I, June 13, 2001, letter), but released Plaintiff to return to work without restrictions (anywhere but with Defendant) in May 2001.

On October 16, 2000, Defendant advised Plaintiff by letter, addressed to Plaintiff in care of her mother as requested, that Defendant needed someone to fill her position on a fulltime basis. Defendant also requested Plaintiff to suggest options for keeping the position covered beyond October 31, 2000. Defendant requested a response by October 26, 2000. Defendant advised Plaintiff that if no options were available that could reasonably be accommodated, she would be discharged. Plaintiff did not respond to the letter.

On October 30, 2000, having received no suggested accommodations or other response from Plaintiff, Defendant discharged her effective October 31, 2000. After Plaintiff's termination, Defendant posted Plaintiff's position as vacant on November 9, 2000, and filled it on December 1, 2000. The person who filled Plaintiff's position has worked on a fulltime basis since she was hired.

Plaintiff alleges that Defendant denied Plaintiff reasonable accommodation and subsequently discharged Plaintiff because of Plaintiff's disability and in retaliation for filing previous charges of discrimination against Defendant. Plaintiff alleges that Defendant directly contacted Plaintiff against her healthcare provider's instructions. On January 12, 2001, Plaintiff filed a charge of discrimination with the EEOC. The EEOC issued a right-to-sue letter on September 13, 2001. Plaintiff amended her complaint a second time and initiated this action within ninety (90) days of receipt of the right-to-sue letter.

## DISCUSSION

### A. Federal Claims

Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the burden of persuasion on the relevant issues. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering the evidence, all reasonable inferences are to be drawn in favor of the non-moving party. *Id.* at 255, 106 S.Ct. 2505. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

### 1. *Title VII—Retaliation Claims*

Plaintiff has sued Defendant under Title VII alleging Defendant's refusal to promote her and ultimately discharging her was in retaliation for previously filing discrimination charges against Defendant.

When a plaintiff presents an employment discrimination claim with insufficient direct evidence to raise a genuine issue of material fact, the plaintiff may proceed under the burden-shifting scheme of *McDonnell Douglas. Brinkley v. Harbour Recreation Club,* 180 F.3d 598, 607 (4th Cir.1999). Pursuant to the *McDonnell Douglas* analysis, the plaintiff has the initial burden of establishing a *prima facie* case. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the plaintiff meets this initial burden, a presumption of discrimination arises, and the burden shifts to the defendant to produce, but not prove, a "legitimate, nondiscriminatory reason" for its decision. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the defendant meets its burden, the presumption of discrimination that arose from the *prima facie* case disappears, and the burden of proof is left with the plaintiff to show that the employer acted with a discriminatory intent and that its proffered explanation was a pretext for discrimination. *Id.* at 252–53, 101 S.Ct. 1089. "[E]vidence of pretext, combined with the plaintiff's *prima facie* case, does not *compel* judgment for the plaintiff, because it is not enough to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination." *EEOC v. Sears Roebuck & Co.,* 243 F.3d 846, 852 (4th Cir.2001) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

To prove a *prima facie* case of retaliation under Title VII, Plaintiff must establish that: "(1) the plaintiff engaged in a protected activity, such as filing a complaint with the EEOC; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action." *Beall v. Abbott Labs.,* 130 F.3d 614, 619 (4th Cir.1997) (citing *Carter v. Ball,* 33 F.3d 450, 460 (4th Cir.1994)).

#### a. *Failed Promotions*

Assuming *arguendo* that Plaintiff established a *prima facie* case of retaliation, Defendant rebutted Plaintiff's *prima facie* case with legitimate, non-retaliatory reasons for each of its adverse actions. Because Plaintiff failed to rebut Defendant's legitimate, non-retaliatory reasons for each of its adverse actions, Plaintiff's failed promotion claims cannot survive summary judgment.

Defendant did not promote Plaintiff to caseworker positions in April, July, and August 1999 because she was not the most qualified applicant for the position. Defendant established a legitimate, non-retaliatory reason for not promoting Plaintiff by producing evidence that better qualified applicants were selected for the caseworker positions. *See Amirmokri v. Baltimore Gas & Elec. Co.,* 60 F.3d 1126, 1129 (4th

Cir.1995) ("An employer may rebut a plaintiff's prima facie case by demonstrating that the person promoted was better qualified for the position."). First, Plaintiff's and the selected applicants' respective prior work performances and work experiences were factors in Defendant's decision not to promote Plaintiff. Plaintiff was unable to work on an independent basis as an income maintenance technician and was inefficient. Plaintiff also did not interact well with supervisors, co-employees, and the general public. On the other hand, each of the applicants selected for the caseworker positions had relevant experience. *See id.* at 1130 (stating that an employer may consider "[an applicant's] outstanding performance [with her previous employer] and the more subjective factors like [her] good interpersonal skills and [her] ability to lead a team"). Second, Plaintiff performed poorly during the interview, while the applicants selected for the positions performed very well. *See Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 515 (7th Cir.1996) (concluding that evidence that a Filipino employee was not offered a promotion because three separate interviewers unanimously considered him the least qualified of applicants interviewing for a job constituted a legitimate, non-discriminatory reason not to give the employee the position).

Defendant also established a legitimate, non-retaliatory reason for not selecting Plaintiff for the October 1999 caseworker position. Defendant contends that Plaintiff did not have sufficient experience for the position particularly when compared to the applicant who was selected for the position. The applicant selected for the position had been employed by Defendant for approximately ten years as a caseworker and had an excellent work history as a caseworker.

■ Plaintiff failed to rebut Defendant's legitimate, non-retaliatory reasons for not promoting her. Plaintiff argues that Defendant acted with retaliatory intent and that the Defendant's explanation is a pretext for discrimination based on the following: (1) Plaintiff's assertions that she received positive evaluations prior to filing discrimination charges; (2) statements from a co-employee, Fesmire, that Plaintiff was qualified for the caseworker positions; and (3) statements from a co-employee, McDuffie, that Plaintiff was able to communicate with other employees.

None of Plaintiff's claims, individually or collectively, is sufficient to rebut Defendant's legitimate, non-retaliatory reason for not promoting Plaintiff. First, an employee's own opinion of her qualifications, without evidence to support it, fails to disprove an employer's explanation or show discrimination. *Beall*, 130 F.3d at 620 ("[A]bsent evidence of retaliatory motive, [the court will] leave to the employer's discretion the method of evaluating an employee's job performance."). Second, Defendant does not contest that Plaintiff met the initial requirements for a caseworker position—otherwise she would not have been interviewed for three of the caseworker positions; however, Plaintiff was not promoted because Defendant determined that she was not the best-qualified candidate. Plaintiff produced no evidence suggesting that Defendant's methodology of selecting the best qualified candidates was discriminatory. Finally, testimony of a co-employee concerning Plaintiff's performance is insufficient to prove that Defendant's stated reasons for not promoting Plaintiff are pretext for retaliation. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir.2000). In sum, rather than produce "evidence that shows [Defendant's] assessment of her performance was dishonest or not the real reason for her termination—as the law requires—[Plaintiff] disputes the merits of [Defendant's] evaluations." *Id.*

Plaintiff also alleges that, in November 1999, Defendant intentionally delayed notifying her that the application was outdated. The evidence indicates that Defendant made a reasonable effort to notify Plaintiff that the application was out of date, and Plaintiff has produced no evidence that suggests a pretext for retaliation. Plaintiff's mere assertions of retaliation are insufficient to counter substantial evidence of legitimate, non-retaliatory reasons for an adverse employment action. *See Hawkins,* 203 F.3d at 281 n. 1. Thus, Plaintiff's failed promotion claims cannot survive summary judgment and fail as a matter of law.

### b. *Discharge*

Plaintiff contends that she was terminated in retaliation for filing charges of discrimination with the EEOC. Due to mental health concerns, Plaintiff went on FMLA leave on June 8, 2000. When Plaintiff exhausted her FMLA leave on September 8, 2000, and was not prepared to return to work, Defendant granted Plaintiff additional unpaid leave until October 31, 2000. After notifying Plaintiff that Defendant needed to fill the position, and receiving no response from Plaintiff, Defendant discharged Plaintiff effective October 31, 2000.

■ Plaintiff has failed to establish a *prima facie* case. Plaintiff engaged in a protected activity (filing charges of discrimination with the EEOC from 1998 to 2000) and Defendant acted adversely against Plaintiff (ultimately discharging Plaintiff); however, Plaintiff has failed to produce evidence that establishes the protected activity was causally connected to Defendant's adverse action. Plaintiff relies on Defendant's knowledge that Plaintiff filed EEOC charges of discrimination against Defendant. Plaintiff filed her last EEOC charge on February 29, 2000, and her discharge was effective October 31,

2000, approximately eight months later. "A lengthy time lapse between the employer becoming aware of the claimant's protected activity and the alleged adverse employment action negate[s] any inference that a causal connection exist[s]." *Hooven–Lewis v. Caldera,* 249 F.3d 259, 278 (4th Cir.2001) (affirming summary judgment and holding that "a six month lag is sufficient to negate any inference of causation" under the Whistleblower Protection Act) (citing *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 657 (4th Cir.1998)). Because Plaintiff presented no additional evidence to establish a causal connection between the Plaintiff's protected activity and Defendant's adverse action, Plaintiff's retaliatory discharge claim fails as a matter of law.

■ Even assuming *arguendo* that Plaintiff can establish a *prima facie* case, Defendant rebutted Plaintiff's *prima facie* case with a legitimate, non-retaliatory reason for terminating Plaintiff. Because Plaintiff failed to rebut Defendant's legitimate, non-retaliatory reason for discharging Plaintiff, Plaintiff's retaliatory discharge claim fails.

Defendant contends that it discharged Plaintiff because Plaintiff was unable to return to work and Defendant needed to fill her position. An employee's unavailability for work, where there is no legal obligation to maintain her employment, is a legitimate, non-retaliatory reason for termination. *See Carter v. Smithfield's of Morehead, Inc.,* No. 93–2034, 1995 WL 440415, at *3 (4th Cir. July 26, 1995) (unpublished opinion). Plaintiff does not dispute that she was unavailable for work at the time of her discharge and her unavailability is confirmed by Harris–Offutt, her healthcare provider.

■ Plaintiff established no evidence that Defendant's legitimate, non-retaliatory reason for discharging Plaintiff was a

pretext for retaliation. Plaintiff contends that "Defendant coerced, intimidated, interfered with the exercise of Plaintiff['s] right to obtain and recover from mental health treatment by contacting Plaintiff in an improper manner preventing her successful and timely recovery." (Pl.'s Mem. of Law in Resp. to Def.'s Mot. for Summ. J., p. 17). This allegation, however, does not establish a pretext for discrimination and, furthermore, is not supported by the evidence. Defendant did not directly contact Plaintiff after receiving instructions from Plaintiff's daughter not to do so, and Defendant addressed all correspondence in care of Plaintiff's mother as instructed. Thus, Plaintiff's retaliatory discharge claim fails as a matter of law.

### 2. ADA—Discharge Claim

Plaintiff also claims that Defendant discharged her on the basis of a disability in violation of the ADA. To establish a *prima facie* case under the ADA, Plaintiff must prove that (1) she has a disability; (2) that she was otherwise qualified for the job in question; and (3) she was discharged because of her disability. *Baird ex rel. Baird v. Rose,* 192 F.3d 462, 467, 470 (4th Cir.1999). Plaintiff has also failed to establish a *prima facie* case of discrimination under the ADA.

■ Plaintiff failed to show that she has a "disability" as defined by the ADA. The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Plaintiff claims that she has a disability as defined by the ADA because she has been diagnosed as experiencing a "major depressive episode and severe melancholia," which are symptoms of post-traumatic stress disorder. (Fesmire Aff., Ex. 16.)

Plaintiff's healthcare provider, Harris–Offutt, indicated in September 2000 that the approximate duration of this condition would be six months from August 12, 2000. Although Harris–Offutt indicated that symptoms may persist throughout Plaintiff's life, she later released Plaintiff to return to work without restrictions (anywhere but with Defendant) in May 2001. Harris–Offutt saw Plaintiff for the first time in June 2000; therefore, Plaintiff's condition persisted for approximately eleven (11) months. Because a temporary condition is not a disability under the ADA, even if its requires an extended leave of absence, Plaintiff has failed to establish a "disability" as defined by the ADA. *See Halperin v. Abacus Tech. Corp.,* 128 F.3d 191, 199–200 (4th Cir.1997), *abrogated on other ground* by *Baird ex rel. Baird v. Rose,* 192 F.3d 462 (4th Cir.1999).

■ Even assuming *arguendo* that Plaintiff has a disability under the ADA, Plaintiff failed to establish that she is a "qualified individual" as defined by the ADA. The ADA defines "qualified individual" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Tyndall v. National Educ. Ctrs., Inc. of Cal.,* 31 F.3d 209, 212–13 (4th Cir.1994); 42 U.S.C. § 12111(8). An employee who cannot come to work, despite her employer's efforts to reasonably accommodate her disability, cannot be considered a qualified individual. *Tyndall,* 31 F.3d at 213 (stating that "an employee who does not come to work cannot perform *any* of [her] job functions, essential or otherwise") (internal citations omitted).

■ A reasonable accommodation does not require Defendant to wait indefinitely for Plaintiff's medical condition to be corrected. *See Myers v. Hose,* 50 F.3d 278, 283 (4th Cir.1995) (internal citation omit-

ted). Furthermore, "[i]n mandating only those modifications that qualify as reasonable, Congress clearly meant to avoid placing employers in an untenable business position." *Id.* (citing *Southeastern Community College v. Davis,* 442 U.S. 397, 412, 99 S.Ct. 2361; 60 L.Ed.2d 980 (1979)). Although Plaintiff does not use the term "indefinite" leave, the evidence indicates that Plaintiff was seeking indefinite leave. When Plaintiff's FMLA leave was almost exhausted and Defendant inquired when Plaintiff could return to work, Plaintiff was not able to indicate when she would be able to return to work. Plaintiff's healthcare provider, Harris–Offutt, was equally non-committal about when Plaintiff could return to work. Because an indefinite leave of absence is not an accommodation required by the ADA, Plaintiff's ADA claim fails as a matter of law.

B. *State Law—Wrongful Discharge Claim*

Defendant moves to dismiss, not through summary judgment but pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff's state claim under North Carolina's Equal Employment Practices Act ("NCEEPA"). A court may dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Even after accepting all well-pleaded allegations in Plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in Plaintiff's favor, Plaintiff has not stated a claim upon which relief can be granted.

■ Plaintiff alleges a cause of action for disability discrimination and retaliation under NCEEPA. NCEEPA provides:

It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

N.C. Gen.Stat. § 143–422.2. "[A]bsent a clear indication from the courts or the legislature of North Carolina that a private right of action does exist under the NCEEPA, it would be inappropriate for a federal court to create a private right of action under the NCEEPA." *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 247 (4th Cir.2000) (internal quotation omitted). North Carolina courts have not recognized a private cause of action under NCEEPA. *Id.; Cline v. Dahle,* No. COA01–94, 2002 WL 857552, at *7 (N.C.App. May 7, 2002) (holding that "our courts have never found that violation of the NCEEPA creates a private right of action"). Defendant, therefore, is entitled to judgment as a matter of law on the state wrongful discharge claim.

CONCLUSION

In sum, the record in this case reflects that Defendant agreed to accommodate Plaintiff's desire to be a caseworker by placing her in a position to gain experience in 1997, despite her less-than-satisfactory work record at that time. Thereafter, Plaintiff received a performance rating of "B" and continued to experience problems with her work. Plaintiff has presented no evidence that Defendant's failure to promote Plaintiff on several later occasions was anything other than Defendant's selection of better qualified and better performing employees for the positions. Although Plaintiff filed EEOC charges as a result of her non-selection for the promotions, Plaintiff's difficulties at work preceded her filing of the initial charge. Plaintiff has

presented no evidence to connect Defendant's failure to promote her to the fact that she had filed a prior charge with the EEOC.

As for Plaintiff's discharge claim, the record reflects that Defendant allowed Plaintiff to remain on leave for two additional months after her FMLA leave was exhausted. When Plaintiff failed to return to work and did not contact the Defendant despite Defendant's request and indication that Defendant would consider any suggestions by Plaintiff for keeping her job open, Plaintiff was terminated. Defendant's unavailability to work is a legitimate reason for terminating Plaintiff's employment, and is not a violation of the anti-retaliation provisions of Title VII or of the ADA.

The court will grant Defendant's motion for summary judgment and will grant the renewed motion to dismiss the NCEEPA claim. The court will deny the renewed motion to strike as moot.