Kimberly MORRIS, Plaintiff,

v.

**BELLSOUTH TELECOMMUNICATIONS, INC.,** Defendant.

No. CIV. 1:02CV01005.

United States District Court, M.D. North Carolina.

Feb. 11, 2004.

Walter T. Johnson, Jr., Greensboro, NC, for Plaintiff.

Leon Harvey Lee, Jr., Atlanta, GA, for Defendant.

### ORDER and JUDGMENT

BULLOCK, District Judge.

On December 24, 2003, the United States Magistrate Judge, pursuant to this court's Standing Order 30, filed his Recommendation on the motion for summary judgment filed by the Defendant. Thereafter, Plaintiff filed objections to the Recommendation, and Defendant filed a response to the objections. The court has reviewed *de novo* the objections filed by the Plaintiff, and finds that they do not affect the ultimate disposition of this case recommended by the Magistrate Judge. The court will therefore adopt the Recommendation of the Magistrate Judge.

NOW, THEREFORE, IT IS ORDERED AND ADJUDGED that Defendant's motion for summary judgment [Doc. # 14] is **GRANTED** on all of Plaintiff's claims, and this action is **DISMISSED** with prejudice.

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

ELIASON, United States Magistrate Judge.

This case comes before the Court on defendant's motion for summary judgment. That motion has been fully briefed by the parties and is now ready for decision.

### Facts

The facts, as set out in the evidence in the record, are as follows. Plaintiff, an African–American female, worked as a Service Representative for defendant's Greensboro Residential Call Center from 1997 until her termination on May 22, 2002. In 2001, plaintiff was diagnosed with post-traumatic stress, depression, anxiety attacks, and insomnia. This diagnosis was a result of preexisting problems with stress, combined with added anxiety produced when plaintiff served on a jury in a murder trial, was the hold-out vote when the jury deadlocked at 11 to 1 for conviction, and then gave a statement to a newspaper. Plaintiff's name and place of em-

ployment appeared in the newspaper and she began receiving harassing telephone calls which created the additional stress.

In September of 2001, plaintiff's stress related problems led to her being approved for a "period of disability" under a short-term disability plan administered for defendant by Kemper National Services. Under this plan, plaintiff did not have to report to work· and was paid benefits. During the period of disability, plaintiff's condition was further affected by the death of her father, so, in the end, plaintiff's time out of work extended to May of 2002. At that time, she was told to report to work. Plaintiff first sought an additional period of disability. When this additional period was denied by Kemper, plaintiff reported as instructed on May 13, 2002 to pick up her work schedule.

At this point, the parties' evidence diverges significantly. According to plaintiff, when she picked up her schedule she also spoke with Lisa Poole–Murphy, a supervisor who plaintiff states was defendant's liaison with Kemper. Plaintiff claims she simply told Murphy that she wanted to talk about how her case was handled. Defendant contends, however, that plaintiff told Murphy that she did not know why Kemper released her to work when she was suicidal and that if she got upset with someone at BellSouth and hurt them after her return to work, defendant would have a lawsuit on its hands. Plaintiff denies making this specific statement.

Plaintiff did return to work a few days later and, according to plaintiff, did have a further conversation with Poole–Murphy about the denial of her benefits. She also admits discussing her situation with Ange-

la Blackwell. Defendant contends that in these conversations plaintiff made further statements that she was suicidal and homicidal and that defendant would be facing a lawsuit if she hurt someone. Defendant further claims that Murphy reported the comments to Geoffrey Lee, the top supervisor at the Call Center. According to defendant's evidence, Lee and Judy Byrd interviewed plaintiff, who repeated her comments. Lee then sent her home with pay pending an investigation.

During the investigation, Lee claims to have learned of plaintiff's additional comments to Blackwell who had reported them to her supervisor Yvette Williams. Williams allegedly stated she did not get involved because she was not sure what plaintiff's reaction would be. After gathering this information, Lee spoke with Sylvia L. Williams whose office is in Charlotte, North Carolina. Williams made the decision to terminate plaintiff due to (1) her comments, which defendant considered to be threatening, (2) a previous suspension imposed when plaintiff was found to have threatened a co-worker, and (3) the effect of plaintiff's behavior on her fellow employees. Lee then informed plaintiff by telephone that her employment was terminated.

Plaintiff's version of events is different. As stated previously, plaintiff agrees that she spoke with Poole–Murphy and Blackwell about her situation. However, she denies making any statements to Poole–Murphy and denies that she made any threatening statement to Blackwell. She does admit to making statements and these contain a lot of both ambiguity and innuendo under the circumstances.[1] She

---

1. Plaintiff makes these denials in her deposition. (Pl. Dep. at 101–104) She now claims that she did not make statements to Lisa Poole–Murphy, but did to Angela Blackwell. She claims she said if somebody was not ready to come back to work and something happened, everybody could sue because Bell

South would be liable. (Pl. Dep. at 104) However, in the charge of discrimination she made to the Equal Employment Opportunity Commission, she did state that she made references to being "homicidal" and "suicidal," but that the statements were taken out of

also claims that when Lee interviewed her, she was not asked to explain herself and did not make any comments about being suicidal or homicidal. She states that when she was told that she was accused of making threats, she asked whether Lee wanted an explanation and was told that he did not because he would be investigating. Plaintiff says that she was then sent home and later told by Lee on the telephone that she was terminated.

## Plaintiff's Claims

In her complaint, plaintiff lists five claims for relief. However, there are really several more. Overall, her claims can be subdivided into three groups. The first group is her claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Title VII). Plaintiff claims that she was retaliated against for her opposition to unlawful employment activities, wrongfully terminated, and discriminated against in violation of Title VII. Her second group of claims arises under the Americans With Disabilities Act, 42 U.S.C. § 12111, *et seq.* (the ADA). Once again, she raises claims of retaliation, wrongful termination, and discrimination. Finally, plaintiff raises two state law claims. The first is that she was wrongfully terminated based on her handicap in violation of the N.C. Gen.Stat. § 143–422.2, a section of the North Carolina Equal Em-

ployment Practices Act. The second is that she was discriminated · against based on her handicap in violation of N.C. Gen.Stat. § 168A–11, a section of North Carolina's Persons With Disabilities Protection Act. Defendant has moved for summary judgment as to all of these claims.

## Summary Judgment Standards

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the evidence in a light most favorable to the non-moving party. *Pachaly v. City of Lynchburg,* 897 F.2d 723, 725 (4th Cir. 1990). When opposing a properly supported motion for summary judgment, the party cannot rest on conclusory statements, but must provide specific facts, particularly when that party has the burden of proof on an issue. *Id.* The mere fact that both parties request summary judgment does not necessarily mean that the material facts are undisputed. *World–Wide Rights Ltd. Partnership v. Combe Inc.,* 955 F.2d 242, 244 (4th Cir.1992). "The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof,

context. She says that she never stated that she was *currently* homicidal or suicidal at the time of the conversations. In her EEOC charge, she admits she told Lisa Poole–Murphy: "If a person tells you they have suicidal ideations and homicidal ideations what more info can Kemper want." She says she continued by saying: "[I]f a person is a threat to themselves and Kemper overlooks that because the doctor didn't word it in the way they wanted it to be worded that would be in violation of safety codes." (EEOC Charge add on at 2–3)

Two things seem apparent. First, in her EEOC charge, plaintiff admits to making

statements to Lisa Poole–Murphy. These statements could be construed as a threat by innuendo. Plaintiff cannot avoid summary judgment by attempting to create an issue of disputed material fact concerning her statements to defendant's employees which could be perceived as implied threats when the factfinder must determine which of plaintiff's conflicting versions of her conversation with Lisa Poole–Murphy is correct. *Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Corp.,* 65 F.3d 1113, 1119 (4th Cir. 1995).

*in the form of admissible evidence,* that could carry the burden of proof of his claim at trial." *Mitchell v. Data General Corp.,* 12 F.3d 1310, 1316 (4th Cir.1993) (emphasis added). A mere scintilla of evidence will not suffice. Rather, there must be enough evidence for a jury to render a verdict in favor of the party making a claim. A few isolated facts are not sufficient. *Sibley v. Lutheran Hosp. of Maryland, Inc.,* 871 F.2d 479 (4th Cir.1989).

Because some of plaintiffs' claims arise under state law, special rules apply to those claims. When state law is unclear, the federal court must rule in such a manner as it appears the highest state court would rule if presented with the issue. Where the state's highest court has not decided the particular issue, the federal court should examine the rulings of the lower state courts. Rulings of the lower courts may be considered as persuasive evidence of state law, but they are not binding on the federal court should it be convinced the highest court would rule to the contrary. *Sanderson v. Rice,* 777 F.2d 902, 903 (4th Cir.1985), *cert. denied,* 475 U.S. 1027, 106 S.Ct. 1226, 89 L.Ed.2d 336 (1986). Furthermore, the federal court must rule on state law as it exists, as opposed to surmising or suggesting an expansion of state law. *Burris Chemical, Inc. v. USX Corp.,* 10 F.3d 243 (4th Cir. 1993).

### Discussion

### Title VII Claims

■ Plaintiff's claims for retaliation, wrongful discharge, and discrimination under Title VII can be disposed of quite easily. With an ordinary Title VII claim, a plaintiff can prove a claim of racial discrimination with either direct evidence or with circumstantial evidence under the method of proof established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

*Moore v. City of Charlotte, NC,* 754 F.2d 1100, 1104–05 (4th Cir.), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985). Here, plaintiff has provided no direct evidence of racial discrimination. When there is a lack of direct evidence of discrimination, the *McDonnell Douglas* scheme allows a plaintiff's case to go forward by shifting the burden of proof to the defendant after the plaintiff has established a *prima facie* case. To establish a *prima facie* case generally, a plaintiff must prove a set of facts from which a reasonable jury could conclude that in the absence of any further explanation, the adverse employment action was the product of racial discrimination. *Duke v. Uniroyal Inc.,* 928 F.2d 1413, 1418 (4th Cir.), *cert. denied,* 502 U.S. 963, 112 S.Ct. 429, 116 L.Ed.2d 449 (1991). When discriminatory termination is alleged, the *McDonnell Douglas* scheme allows plaintiff to prove a *prima facie* case by showing (1) that she is a member of a protected class, (2) that she was terminated, (3) that a person of another race engaged conduct similar to plaintiff's, and (4) that the disciplinary measures taken against plaintiff were harsher than those taken against the other person. *Moore v. City of Charlotte, N.C.,* 754 F.2d 1100, 1105–06 (4th Cir.), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985).

■ Here, plaintiff can demonstrate the first two elements of her *prima facie* case, but not the second two. There is no question that plaintiff is an African–American and that she was terminated. Still, she has pointed to no instance where any non-black employee was twice found to have made threats, much less similar threats, in violation of defendant's workplace violence policy, and, in addition, was not fired after such a finding had been made. In her brief in response to defendant's motion, she does refer to alleged incidents where

Caucasians were treated better than she was until the disparate treatment was pointed out and the disparity was corrected. However, these isolated alleged incidents have no connection whatsoever with her termination and can in no way serve as similar situations for the purposes of establishing her claim of wrongful termination. For this reason, her Title VII wrongful termination claim fails.

■■■ The *McDonnell Douglas* burden shifting scheme applies to retaliation claims as well. *Karpel v. Inova Health System Services,* 134 F.3d 1222, 1228 (4th Cir.1998). To establish a *prima facie* case of retaliation, plaintiff must show that (1) she engaged in a protected activity, (2) that she was subjected to an adverse employment action, and (3) that there was a causal link between the activity and the adverse action. *Beall v. Abbott Laboratories,* 130 F.3d 614, 619 (4th Cir.1997). If the *prima facie* case is established, the burden then shifts to the defendant to give a legitimate reason other than retaliation for taking the adverse action. If defendant does so, plaintiff must show that this reason is false and that retaliation was the real motivation for the adverse action. *Id.*

Here, it is apparent that plaintiff was subjected to an adverse employment action, i.e., her termination. However, plaintiff cannot establish the other two elements of her *prima facie* case. Title VII provides that in pertinent part that it is unlawful:

> for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3.

■■■ Plaintiff has made no argument, much less pointed to any evidence, that she ever engaged in any protected activity as described in the passage above. She did make reference in her EEOC charge and/or deposition to at least two instances where she felt that a Caucasian employee was treated in a manner different than she was treated. However, in neither instance does she claim to have openly opposed this practice in any way or to have made a charge, participated in an investigation, etc. Further, because plaintiff engaged in no protected activity, she cannot show that her discharge was connected to such activity. For both of these reasons, plaintiff has failed to establish a *prima facie* case of retaliation in violation of Title VII and her claim should be dismissed.

In her complaint, plaintiff makes a general claim of "discrimination" under Title VII. The exact nature of this claim is not entirely clear. However, plaintiff seems to allege or argue a Title VII hostile environment claim or a disparate treatment claim by relying on the two allegedly discriminatory incidents mentioned above. In one, a Caucasian male was scheduled to take a test for advancement even though he had less experience than plaintiff and others in her department. When this was pointed out to management by another Caucasian employee, the man did not take the test. (Pl.Dep., pp. 39–40) In the second incident, an African–American supervisor told plaintiff that she was dressed like a hooker and had her put on a jacket because she wore a top with no bra underneath. When a white employee did the same, the supervisor said nothing to her until someone pointed the woman out. (Pl. EEOC Charge)

■■■ Plaintiff cannot prevail on any claim using these incidents. A plaintiff seeking to establish a hostile environment claim must show that the alleged discrimination was so severe or pervasive that it altered the conditions of her employment

and created an abusive environment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). Plaintiff's two meager allegations, both of which were apparently rectified when pointed out to management, cannot hope to meet this standard.

Any claim based on disparate treatment would also fail because plaintiff was not subjected to any adverse employment action in either incident. *See Boone v. Goldin*, 178 F.3d 253 (4th Cir.1999) (adverse employment action a requirement for Title VII liability).

### ADA Claims

■ Turning next to plaintiff's ADA claims, plaintiff once again alleges wrongful termination, retaliation, and general discrimination. The *McDonnell Douglas* burden shifting scheme applies to ADA cases as well and the elements of a *prima facie* case for wrongful termination and retaliation claims under the ADA are essentially the same as described above in the discussion dealing with plaintiff's Title VII retaliation claim. To show wrongful termination, plaintiff must provide evidence that (1) she is disabled, (2) she was otherwise qualified for her job, and (3) she was discharged because of her disability. *McNeil v. Scotland County*, 213 F.Supp.2d 559, 569 (M.D.N.C.), *aff'd*, 53 Fed.Appx. 242 (4th Cir.2002), *cert. denied*, — U.S. ——, 123 S.Ct. 2578, 156 L.Ed.2d 605 (2003). For retaliation, plaintiff must

show that (1) she engaged in a protected activity, (2) defendant took an adverse employment action against her, and (3) there is a causal connection between the two. *Haulbrook v. Michelin North America, Inc.*, 252 F.3d 696, 706 (4th Cir.2001). If either of these *prima facie* cases is established, the burden shifts to defendant to produce a legitimate, non-retaliatory reason for its actions toward plaintiff. If such a reason is given, plaintiff must then show that the proffered reason is a pretext for forbidden conduct. *Id.*

■ Regarding plaintiff's wrongful termination claim, there is a considerable question as to whether plaintiff, who has been steadily employed since the time of her termination by defendant, is or was disabled as defined by the ADA. However, assuming only for the sake of argument that she can make that showing and that she can establish the other two elements of her *prima facie* case, plaintiff still cannot prevail because there is no question that defendant has provided a legitimate, non-retaliatory reason for discharging plaintiff. It has submitted the declaration of Sylvia Williams who states that she was the person who made the decision to terminate plaintiff's employment and that she did so based on her conclusion that plaintiff made threatening statements on May 16, 2002, coupled with plaintiff's prior violation of defendant's workplace violence policy.[2] (Williams Decl. ¶ 5–7) Violation of work-

2. Plaintiff attempts to have the Court disregard Sylvia Williams' declaration because it is not an affidavit, because it is not based on personal knowledge, and because it contains the hearsay statements of other persons such as Poole–Murphy and Lee. The Court will not disregard the declaration. Declarations are proper to consider at summary judgment if they are signed under penalty of perjury according to 28 U.S.C. § 1746. *See, e.g., United States v. Arlington County, Va.*, 702 F.2d 485, 490 (4th Cir.1983). Williams' declaration is so signed and such declarations have the sta-

tus of an affidavit. *Id.* Further, to the extent that Williams' declaration gives her reasons for terminating plaintiff, it is based on her personal knowledge. Finally, as to plaintiff's hearsay argument, although the declaration and exhibits do contain the statements of other persons, the statements are not intended to prove the truth of the matter asserted, i.e. that plaintiff made threats. Instead, the declaration shows that Williams believed and had reason to believe that this was the case when she terminated plaintiff's employment.

place rules is a legitimate reason for discharge. *Worster v. U.S. Postal Service,* 132 F.Supp.2d 397, 405–406 (M.D.N.C. 2001), *aff'd,* 28 Fed.Appx. 324 (4th Cir. 2002).

■ Plaintiff does not deny that the making of threats in violation of defendant's workplace violence policy is a legitimate reason to terminate her employment. However, she again states that there is a genuine issue as to whether she made such threats. As noted previously, plaintiff at times admits to making statements that are both ambiguous and contain innuendo from which a threat could be inferred. *See* n. 1, *supra.* However, even if the Court were to assume that no threatening statements of any kind were made, plaintiff cannot prevail at this stage of the analysis because the issue is not whether she actually made any threats, but whether the decision-maker who terminated her believed that she made such threats. *Holder v. City of Raleigh,* 867 F.2d 823, 829 (4th Cir.1989) (honestly held reason, even if poorly founded, is not pretext). Williams states that she did hold such a belief based on the information provided to her which consisted of statements from Poole–Murphy, Blackwell, Byrd, Lee, and Yvette Williams. All claimed that plaintiff made threatening statements on various occasions. Plaintiff has pointed to no evidence that Sylvia Williams did not believe that plaintiff made threatening statements or that her decision to terminate plaintiff was not made for that reason.[3] Therefore, defendant is entitled to summary judg-

ment on plaintiff's claim for wrongful discharge under the ADA.

■ Plaintiff's retaliation claim fails for the same reason. Plaintiff asserts that she engaged in protected activity when she spoke with her fellow employees concerning the denial of her request for further disability and when she sought approval of more time off from work. Defendant does not deny that such actions would generally be a protected activity. However, it does argue that plaintiff's statements should not be construed as protected activity because they contained threats. Threats have been found not to be protected activity in other contexts. *Florida Steel Corp. v. N.L.R.B.,* 529 F.2d 1225 (5th Cir.1976) (National Labor Relations Act); *Corriveau & Routhier Cement Block, Inc. v. N.L.R.B,* 410 F.2d 347 (1st Cir.1969) (same). While plaintiff denies making threats, the evidence shows she made statements which could be perceived as threats. *See* n. 1, *supra.*

Even if the Court assumes that plaintiff has established a *prima facie* case under the ADA for retaliation, defendant is still entitled to prevail in the ultimate analysis. This is because, as discussed above, it has proffered a legitimate reason for its termination of plaintiff and plaintiff has not shown this reason to be a pretext for discrimination or that discrimination played any part in the decision to fire her.

■ Plaintiff's claim of general discrimination under the ADA also · fails. Once again, plaintiff has failed to define

---

3. For some reason, plaintiff makes the unsupported statements that defendant had Sylvia Williams produce the declaration for no reason other than the fact that she is an African–American female and claims that Lee was the actual decision-maker in plaintiff's termination. (Pl.Resp.Brf., pp. 5, 11) Plaintiff has produced no evidentiary support for these assertions which are directly contradicted by Williams' declaration. In fact, all indications in the record are that Williams, Lee, and a number of plaintiff's co-workers believed that plaintiff had made the statements that Williams found to be threatening and that Williams acted for this reason alone. Finally, the analysis remains the same even if Lee was the true decision-maker.

this claim or what actions by defendant support her claim. She merely cites a doctor's recommendation that she be further evaluated and makes vague references to accommodations on page 7 of her response brief. Assuming this to be the claim, in order to establish a failure to accommodate under the ADA, plaintiff would need to prove (1) that she is an individual with a disability as defined in the ADA, (2) that defendant knew this, (3) that she could have performed the essential functions of her job with reasonable accommodations, and (4) that defendant failed to make such accommodations. *Rhoads v. Federal Deposit Ins. Corp.*, 257 F.3d 373, 387 (4th Cir.2001), *cert. denied,* 535 U.S. 933, 122 S.Ct. 1309, 152 L.Ed.2d 219 (2002). In addition to the previously mentioned question as to whether plaintiff can successfully show that she is or was disabled, plaintiff never specifically states, much less gives proof of, any job accommodations would have been needed to help her properly perform her job. Plaintiff also submits no proof that she ever proffered any specific accommodations to defendant.[4] Therefore, this claim fails and summary judgment should be granted to defendant on all of plaintiff's ADA claims.

### Wrongful Termination Under N.C. Gen.Stat. § 143–422.2

■ Plaintiff's first state law claim for relief is brought under N.C. Gen.Stat. § 143–422.2. She contends that she was wrongfully discharged because of her "handicap." (Complaint, Count Two) That statute does state that persons have the right to "obtain and hold employment without discrimination or abridgment on account of ... handicap ...." However, the statute is a policy statement by the North Carolina Legislature and no private cause of action exists under this statute. *McNeil v. Scotland County,* 213 F.Supp.2d 559, 570 (M.D.N.C.2002).

Defendant's motion to dismiss this state law claim could be granted for the above reason alone. *Id.* However, in her response brief, plaintiff appears to ask that her claim instead be treated as a common law claim for wrongful discharge in violation of public policy. Such a claim does exist in North Carolina as an exception to the "at will" employment rule and N.C. Gen.Stat. § 143–422.2 can be used by a plaintiff to establish public policy for purposes of bringing a common law wrongful termination claim. *Coman v. Thomas Manufacturing Co., Inc.,* 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989) (exception exists); *Jackson v. Blue Dolphin Communications of North Carolina, L.L.C.,* 226 F.Supp.2d 785, 792 (W.D.N.C.2002) (statute establishes public policy). Out of an abundance of caution, the Court will treat plaintiff as attempting to raise such a claim. However, the claim still fails.

■ Plaintiff states in her response brief that she was working pursuant to an employment contract that involved defendant and a labor union. (Pl.Resp.Brf. pp. 8–9) If so, she was not an "at will" employee and so cannot raise a claim under the common law exception to the "at will" rule. *Trexler v. Norfolk Southern Railway Co.,* 145 N.C.App. 466, 471, 550 S.E.2d 540, 543 (2001). Any state law claim would be for breach of contract instead, and plaintiff makes no such claim. *Id.* Furthermore, state law claims for wrongful termination for discharge due to handicap are analyzed with the same burden shifting test as claims brought under the ADA and Title

---

4. If plaintiff is claiming that her request for more time off was a request for an accommodation, the Fourth Circuit has previously rejected the idea that open ended requests for time off from work are reasonable accommodations. *Myers v. Hose,* 50 F.3d 278 (4th Cir.1995); *Tyndall v. National Education Centers, Inc.,* 31 F.3d 209 (4th Cir.1994).

VII. *Brewer v. Cabarrus Plastics, Inc.*, 130 N.C.App. 681, 686, 504 S.E.2d 580, 584 (1998), *rev. denied*, 350 N.C. 91, 527 S.E.2d 662 (1999). For this reason, any common law action plaintiff might have fails for the reasons discussed above in the sections of this Recommendation dealing with her Title VII and ADA claims. Defendant has provided a legitimate, non-discriminatory, non-retaliatory reason for her termination and plaintiff has no evidence that this was not the reason for her termination.

### Wrongful Termination Under N.C. Gen.Stat. § 168A-11

Plaintiff's final claim for relief is brought under N.C. Gen.Stat. § 168A-11 and states that she was discriminated against because of her alleged disability or "handicap." This claim fails for two reasons. First, the very statute that plaintiff relies on to bring her claim explicitly states that if she also brings a claim under the ADA, "no court shall have jurisdiction" over the state law claim. N.C. Gen.Stat. § 168A-11(c). Because plaintiff has raised her claims under the ADA, this Court does not have jurisdiction over her state law claim under N.C. Gen.Stat. 168A-11 and it should be dismissed. *Gottesman v. J.H. Batten, Inc.*, 286 F.Supp.2d 604, 615 n. 7, (M.D.N.C.2003).

Next, any civil action allowed by N.C. Gen.Stat. § 168A-11 must be brought within 180 days of the time that a plaintiff reasonably becomes aware of the discriminatory practice or prohibited conduct that gives rise to the action. N.C. Gen.Stat. § 168A-12. The latest date of any possible discrimination against plaintiff would have been the day of her termination which occurred on May 22, 2002. Her suit was filed on November 20, 2002 or 182 days later. Therefore, plaintiff's suit is out of time. *Gottesman*, 286 F.Supp.2d at 615. Plaintiff does not deny that her suit was not timely filed, but

states that defendant waived its statute of limitations defense by not raising it in its answer. While a failure to assert a defense in an answer is normally a waiver of the defense, an exception exists where a plaintiff is not prejudiced or unfairly surprised by defendant's later assertion of the defense. *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 612 (4th Cir.1999). In the instant case, plaintiff has neither alleged nor shown any prejudice or unfair surprise. Therefore, no waiver occurred and plaintiff's claim under N.C. Gen.Stat. § 168A-11 should also be dismissed as being time barred.

For the reasons stated above,

**IT IS THEREFORE RECOMMENDED** that defendant's motion for summary judgment (docket no. 14) be granted and Judgment be entered dismissing this action.

Dated Dec. 24, 2003.